EVANS et al. v. EVANS, Judge, et al.

No. 6153. Decided February 2, 1940. (98 P. 2d 703.)

190

*Hurd & Hurd,* of Salt Lake City, for plaintiff.

*Irvine, Skeen, Thurman & Miner,* of Salt Lake City, for defendants.

WOLFE, Justice.

The petitioners (plaintiffs in this suit) seek to make permanent a temporary writ of prohibition restraining the defendant Judge from further enforcing or attempting to enforce an order requiring the petitioners to produce certain records of the United Bond & Finance Corporation before a notary deputized to take the deposition of the petitioner, Boyd Evans, secretary of the said Corporation. The mandatory part of the order, dated June 2nd, made by the defendant Judge reads as follows:

"with and have in his possession at said time all original books, records and papers of the defendant United Bond and Finance Corporation pertaining in any manner to its business since the date of its organization and particularly the minute book of said corporation; and that the said defendant Boyd Evans submit to the taking of his deposition in said matter and remain and continue in attendance at the taking of said deposition as the same is directed and continued by the said notary public, until excused and released therefrom.

"It is further ordered that the said Boyd Evans forthwith pay to the plaintiff the sum of $6.90 representing the costs of the proceedings leading up to the taking of said deposition and the service of the order to show cause, citation and warrant of arrest herein." (Exhibit M.)

Events leading up to the making of said order were as follows: Late in 1938, John L. Wilson and Mayme J. Wilson, defendants herein, filed a suit in the District Court of Salt Lake County on nine alleged causes of action, eight of which had been assigned to them by other persons. Since, as will later appear, the scope and method of the inquiry as to what records a witness "is bound by law to produce in evidence" is somewhat flexible and depends on the nature of the issues, we briefly state the nature of this suit as revealed from the allegations of the complaint. For clarity,

hereafter, we shall refer to plaintiffs in this special proceeding as petitioners and the defendants herein as respondents, and the plaintiffs and defendants in the suit in the District Court, as plaintiffs and defendants. Plaintiffs sued W. R. Beckstead, William L. Christensen, Boyd Evans, and United Bond & Finance Corporation, alleging that Beckstead was chief stockholder and president of the latter Corporation; that the other defendants were officers thereof and agents of Beckstead; that plaintiffs and their assignors were all owners of investment units in said defendant Corporation, hereafter called the Corporation; that said stock or investment units provided for their payment on maturity and the right to surrender same and receive out of the assets a fixed cash amount; that Beckstead conspiring with the other defendants while in a relationship of trust and confidence with plaintiffs, falsely represented that the Corporation was not in sound condition and by such representations induced the plaintiffs and their assignors to exchange their investment units in the Corporation for stock in worthless companies controlled by Beckstead, whereas the Corporation was actually in good financial condition. Plaintiffs' complaint prays for restitution of the investment units or, in event of impossibility, for money judgments on the nine causes of action. After service of summons, but before answer, plaintiffs served notice under Sec. 104-51-7, Sub. (1) R. S. U. 1933, to take the deposition of Beckstead, Christensen, and Evans and, under Sec. 104-51-7, Sub. (3) R. S. U. 1933, of O. P. Pearce.

On Feb. 4, 1939, Evans deposed that he was Secretary of the Corporation and that as such officer he had possession of all the books, records and papers of the same but that after notice of taking of deposition had been served, Beckstead took the books and records from him. Counsel for the plaintiff demanded that Evans produce the Company records and asked for a continuance until Feb. 6th to permit them to be brought in. The notary continued the taking of the deposition until Feb. 6th over objection of defen-

dants' counsel that he could not be present on said date. The notary also issued, and there was served on Evans, a subpoena to bring in on Feb. 6th, "all books, records and papers now in your possession, or under your control as an officer of the United Bond and Finance Company" showing certain records of stock ownership in named companies and various other specified matters, and "showing all business transactions and dealings between the United Bond and Finance Corporation and said parties [named in the subpoena] and O. P. Pearce" over a certain period and also records showing certain payments by the Corporation or Beckstead or persons on their behalf "to O. P. Pearce or any other person during the year 1935 for and in connection with the acquisition of shares or units of stock of the United Bond and Finance Corporation or the Investors Thrift Corporation [one of the companys set out in the complaint, the stock of which was alleged to be worthless but was used to trade for units of the Bond Company belonging to plaintiffs and their assignors], by or from O. P. Pearce, or any other person, for W. R. Beckstead, or the United Bond and Finance Corporation during the year 1935." The subpoena contained a further demand for *all* books, records and papers in possession or under control of witness pertaining to the business affairs of the Corporation, and the Thrift Company.

The gist of the subpoena is set out to show the nature of the inquiry which plaintiffs were pursuing and the scope of their demands. The subpoena hints at the theory that Pearce and others were go-betweens to procure the investment units for Beckstead from plaintiffs and their assignors. Plaintiffs desire to investigate along these lines because such information presumably would be obtainable only from direct testimony of these go-betweens or from the records showing that they acted on behalf of Beckstead or his allegedly owned Corporation.

On Feb. 6th Evans and his counsel failed to appear, whereupon plaintiffs made application to the respondent Judge

for an order to show cause, which order was issued and served on Evans requiring him to show cause why he should not be punished for contempt and be made to comply with the subpoena and with further orders of the court in regard to the production of the books. [To this citation defendants demurred and moved to dismiss it on the ground that the certificate of the notary was insufficient on which to base the citation and that the court was "without jurisdiction to entertain or hear the same."] The court did nothing more than set March 8, 1939, at 10 o'clock a. m. as the hour to take the deposition.

On March 8th, Evans and Christensen appeared before the notary and produced certain books of the Corporation but Evans refused to produce its Minute Book, on the ground that it had "no bearing upon these transactions." Counsel for plaintiffs, asserting that the Minute Book was the first step in his examination of the books, petitioned the respondent Judge for an order directing the sheriff to produce the witness before him, whereupon such order was made and the witness arrested and brought before the court. No contempt order was made nor were any findings made as to contempt. The court contented itself with making the order of June 2nd [set out above]. On June 10th petitioners (defendants in the original suit) appeared before this court and obtained a temporary writ of prohibition. The respondents by return day filed a demurrer on the ground that the facts set forth in the application are not sufficient to entitle petitioners to a permanent writ of prohibition. It is on the application and the demurrer that the question is before this court: to wit—Did the respondent Judge have power to make the order of June 2nd, 1939?

Prohibition lies to arrest the proceedings of any tribunal corporation, board or person, whether exercising functions judicial or ministerial, when such proceedings are without or in excess of his or its jurisdiction. Sec. 104-69-1, R. S. U. 1933. And prohibition lies only when there is no adequate remedy. The question is, therefore, is

the error one which results in usurping jurisdiction, or is it only error within the framework of its jurisdiction? The first is jurisdictional error, that is, that which takes unwarranted jurisdiction; the second is error within jurisdiction. The difference between these two kinds of error is sometimes very difficult to distinguish. We treated this at length in *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377. It is unnecessary further to elaborate upon it. It was also there said that where the error was such as to prevent any adequate remedy by appeal because by that time the harm already would be done, we would not look too closely to see if the threatened action of the court would be mere error within its jurisdiction or jurisdictional error. We followed that doctrine in *Olson* v. *District Court*, 93 Utah 145, 71 P. 2d 529, 112 A. L. R. 438.

In the instant case we again have a situation where, even if the court is acting merely in error rather than in excess of its jurisdiction in permitting a party to examine plenarily the books of a witness, the results of its action might be very harmful and impossible to remedy. Confidential matters not having any relevancy to the issues might be divulged at great embarrassment or pecuniary disadvantage. The case of *Ketchum Coal Company* v. *District Court*, 48 Utah 342, 159 P. 737, 745, 4 A. L. R. 619, was the reverse of this case. There the court refused to permit a wholesale examination of the books and mandamus was sought to compel it to vacate the order. But there the exception could be preserved, and the claimed error reviewed on appeal. Consequently, the language of this court in stating that "If the court errs in *granting* or refusing inspection the party aggrieved may preserve his exception to the court's ruling and may present it to this court on appeal after final judgment" (italics added) was perhaps too broad. If the court erroneously permitted plenary inspection, surely waiting until final appeal would be too late to prevent the harm done by it. And indeed, recognition of this may be the reason that the courts have held that per-

mission to inspect books when a proper foundation was not laid, was itself an excess of jurisdiction, in order that prohibition might lie. See *Atwood* v. *Cox*, supra. *Dunlop* v. *District Court*, 214 Iowa 389, 239 N. W. 541; *Funkenstein* v. *Superior Court*, 23 Cal. App. 663, 139 P. 101; *Kullman, Salz & Co.* v. *Superior Court*, 15 Cal. App. 276, 114 P. 589; *State ex rel. Bronson* v. *Superior Court*, 194 Wash. 339, 77 P. 2d 997; *Main* v. *Ring*, 219 Iowa 1270, 260 N. W. 859, where the court said the trial court could exercise a large amount of discretion and so long as the orders are within its jurisdiction they will not be disturbed by certiorari proceedings; *Atchison, T. & S. F. Ry. Co.* v. *Burks*, 78 Kan. 515, 96 P. 950, 18 L. R. A., N. S., 231. And though the granting of an order to permit inspection of books or the making of an order duces tecum too broad in scope, may not be, in reality, in excess of jurisdiction but merely error in the exercise of jurisdiction in permitting examination without a proper showing, the courts will grant the writ of prohibition. See concurring opinion of Mr. Justice Harlan, in *Hale* v. *Henkel*, 201 U. S. 43, 78, 26 S. Ct. 370, 50 L. Ed. 652, 667.

For the above reasons we consider the merits of this case on the theory that the application raises a question of the court's power rather than one of error committed within its power. If it were the latter, respondents would be entitled to prevail on their demurrer because technically no writ would lie but both sides seem to be anxious for a decision on the merits. The respondents have urged recalling the writ not because the court has erred only within its jurisdiction, but because it has not erred at all—on the theory that it not only had the power to make the order of June 2nd but that the order was lawfully made. We proceed to so consider it.

From the background of this case set out somewhat at length, it appears that plaintiffs may have the idea that a subpoena duces tecum brings the books before the notary for plenary inspection, even though it may not be necessary

to swear the witness summoned with the records. Wigmore, 2nd Ed., Vol. 4, page 669, note 3. It is to be doubted whether such is the case. Provision for inspection of records of an adverse party out of court is provided by Sec. 104-53-2, R. S. U. 1933, but such examination is as to "evidence relating to the merits of the action or the defense therein" and can only be ordered on notice. Thus a preliminary hearing is provided to determine what may be inspected, which is restricted to that which may reasonably establish or tend to establish or defeat a matter in issue. Courts have refused to permit inspection where there was doubt and have required the party to resort to a subpoena duces tecum which brings the books *into court* or before the notary or referee where they are still under the control of the witness who produces them, at least for the purpose of objection to any fishing expedition. *Cohen* v. *Rothschild*, 162 App. Div. 611, 147 N. Y. S. 915; *Frear* v. *Lewis*, 170 App. Div. 598, 156 N. Y. S. 794; *Bencoe* v. *McDonnell*, 210 App. Div. 123, 205 N. Y. S. 343. The court in all these cases refused inspection when a subpoena duces tecum would suffice and *thus serve to bring the books where examination could be supervised.* See Wigmore 2nd Ed., Vol. 4, note 3, page 669.

Section 104-49-6, R. S. U. 1933, covers the right to subpoena books and records. It reads in part:

"It may also require him [the witness subpoenaed] to bring with him any books, documents or other things under his control which *he is bound by law to produce in evidence.*" (Italics added.)

A blanket subpoena will not suffice. Such might mean uselessly producing tons of records and result in great embarrassment and inconvenience to the business of a witness or his company. See *Hale* v. *Henkel*, supra, at pages 76 and 77 of 201 U. S., at pages 379, 380 of 26 S. Ct., 50 L. Ed. 652, where it was held that a subpoena duces tecum too sweeping in its terms and therefore unreasonable, constituted a violation of the Fourth Amendment to

the U. S. Constitution, U. S. C. A., protecting a "person" from unreasonable searches and seizures. *Kullman, Salz & Co.* v. *Superior Court,* supra. Also many cases cited on on page 789 of 32 A. L. R. Also case in note to *Ex parte R. D. Gould,* 60 Tex. Cr. R. 442, 132 S. W. 364, 31 L. R A., N. S., 835. The distinction made in this note between individuals and corporations as marked in *Hale* v. *Henkel,* supra, appears to be in reference to incrimination and not in reference to the necessity for particularity in specification in the subpoena. And if the number of books *specified* is so great as to be unreasonably burdensome to produce them all in court or before the officer, the witness may justify his failure to produce them, until such time as he or others may be examined to determine which contain relevant matter. *Hale* v. *Henkel,* supra.

Such is the procedure to the point of production before the court or officer. But after they are produced, there is no right to take them from the custody of the witness and examine them at large over objection of the witness that they are irrelevant to the issues, although the judge and not the witness must determine their relevancy. Chamberlayne Evidence, Vol. 5, page 5126. If the examining party knows what entries in the book he wants in the record he may have the same marked as exhibits, and request the witness to turn to them, whereupon he may offer in evidence the pages containing said entries to be refused or admitted, depending upon their materiality and competency. But ofttimes the case is not so simple. While the opposing party may not engage in a drag-net examination, he is not helpless in a case like this where it would appear that all the evidence of the alleged fraudulent dealings lies in the breasts of the adverse parties. Especially is this so where one claims to have been induced to part with his stock by fraudulent inducements, which would serve to deprive him not only of the stock but of the stockholder's right of inspection of his company's books.

Common sense procedure is needed—such as will protect,

on the one hand, a witness against wholesale incursions into his books and papers and yet, on the other hand, give sufficient scope to the examination to enable the adverse party to determine whether there are in the books matters material to his prosecution or defense. This procedure lies in the flexibility a judge possesses in his supervisory capacity. Before him there may be a preliminary examination of witnesses who are familiar with the books, conducted in such a way as to have them state in general whether there is or is not in the records entries pertaining to certain transactions and, if so, to require the witness to turn to said entries. If it is claimed that the entries are confidential and not relevant, they may then be examined by the judge. Thus in his preliminary examination, in the nature of a voir dire, of the records in light of the issues or probable issues, the judge may make a pronouncement as to whether he thinks they are material or not before the opposing party is permitted to see them. The very fact that the witness is required to bring with him only books, etc., under his control which contain relevant matters, requires some procedure for the discovery of this preliminary question. In *Hale* v. *Henkel,* supra [201 U. S. 43, 26 S. Ct. 380, 50 L. Ed. 652], it was said "some necessity should be shown, either from the examination of witnesses orally, or from known transactions of these companies with the other companies implicated, or some evidence of their materiality produced to justify an order for [their] production". For the same reason, when records are summoned into court and objection made to their inspection on the ground of immateriality, some examination of the summoned witness or others as to the nature of their contents may be conducted by the court or by counsel under the supervision of the court. See also *Therrell* v. *Howland,* 108 Fla. 299, 146 So. 203. If they are to be admitted, copies of the material entries by stipulation may be admitted or the confidential non-material parts of the books sealed. See *Pynchon* v. *Day,* 118 Ill. 9, 7 N. E. 65; *Titus* v. *Cortelyou,* 1

Barb., N. Y. 444; *Elder* v. *Bogardus'* Ex'rs, 1 Edm. Sel. Cas., N. Y., 110; *Carver* v. *Pinto Leite,* L. R., Ch. App., Vol. 7, p. 90.

And the nature and extent of this voir dire examination will, of course, depend on the nature of the issues, the relationship of the parties, the willingness or unwillingness of the witness to cooperate and how far the court in its sound discretion may think it necessary to permit ■ inquiry in order that justice may be served. Mr. Justice Holmes, speaking in the case of *Federal Trade Commission* v. *American Tobacco Company,* 264 U. S. 298, 44 S. Ct. 336, at page 338, 68 L. Ed. 696, 32 A. L. R. 786 at page 792 of the latter volume states:

"For all that appears the corporations would have been willing to produce such papers as they conceived to be relevant to the matter in hand [citing cases.] If their judgment upon that matter was not final, *at least some evidence must be offered to show that it was wrong.*" (Italics added.)

Certainly the evidence to show that such judgment as to materiality was wrong could be elicited from the witnesses familiar with the books on proper questioning. The fact that a party is summoned to bring certain papers does not mean that he must submit them to indiscriminate inspection.

And it is quite probable that if on such proper questioning the witness appeared uncooperative in aiding the court or counsel in the inquiry as to what in the books might be relevant, the court could itself examine the books, or, where it appeared that the witness' unwillingness indicated a desire to withhold material evidence, the court might not transgress the bounds of proper discretion under such circumstances if it permitted counsel to examine the books. The better way to protect what is confidential and irrelevant is to cooperate in disclosing that which may be relevant.

Thus within the supervisory and administrative powers of the court there is ample machinery to aid in discovery

of what in the records may be examined and what not. But in this case the books were to be produced before a notary who had very limited powers of that nature. ■ Had the books been brought before him the witness might have refused to deliver them to counsel for examination which well he could, if he in good faith believed matters therein not material and not of a nature to aid in establishing the examining party's cause, the limited purpose of such examination. *Cully* v. *Northern Pac. Ry. Co.*, 35 Wash. 241, 77 P. 202; *State ex rel. Bronson* v. *Superior Court,* supra; Pomeroy Equity Jurisprudence, 2d Ed., Vol. I, Sec. 201, at page 248.

The order of June 2nd does not require the witness to deliver to the plaintiffs the books for examination by them, upon bringing them before the notary . In that respect it rises no higher than an order subpoena duces tecum and shall be so treated. In consequence it is necessary to determine what procedure should ensue if a witness refuses to produce books named in a subpoena duces tecum before a notary, or, if produced, refuses to submit to questions properly directed toward determining what might and what might not be material in the books.

It can be definitely stated that the order of June 2nd was, as to all except the Minute Book, entirely too broad. See cases heretofore cited. The following cases cited by counsel for petitioners pertain to discovery and are more in point in determining the extent of the order for examination of books under Sec. 104-53-2, R. S. U. 1933, or ■ under such statutes as the 1933 Amendment to the California statutes which require an affidavit to accompany an application for a subpoena duces tecum. See Chap. 567, p. 1479, Statutes California, 1933. But the cases cited are in point on the broader ground that neither under a subpoena duces tecum nor under a motion to examine, will an examination be permitted of a nature to contravene Art. 1, Sec. 14, of our Constitution. See *Ex parte Clarke*, 126 Cal. 235, 58 P. 546, 46 L. R. A. 835, 77 Am. St. Rep. 176; *Whitman* v.

*Weller,* 39 Ind. 515; *Barclay* v. *Barclay,* 171 App. Div. 892, 155 N. Y. S. 632; *Commercial Bank of Spanish America* v. *Superior Court,* 192 Cal. 395, 220 P. 422; *State ex rel. Atchison, T. & S. F. Ry. Co.* v. *Trimble,* 254 Mo. 542, 163 S. W. 860; *United States* v. *Union Trust Co. of Pittsburgh,* D. C., 13 F. Supp. 286; *State* v. *Chickasha Milling Co.,* 180 Okl. 611, 71 P. 2d 981; *Funkenstein* v. *Superior Court,* supra; *Nelson* v. *Superior Court,* 9 Cal. 2d 729, 73 P. 2d 232, relating to the sufficiency of the grounds which must be shown to obtain a subpoena duces tecum under the 1933 Amendment. It would appear that under the facts, the ruling in *Shell Oil Co.* v. *Superior Court,* 109 Cal. App. 75, 292 P. 531, went too far. The plaintiff would have been unable to elicit facts which might have been purely within the records of the defendant and necessary to establish her case. *Wallace Bank & Trust Co.* v. *First National Bank,* 40 Idaho 712, 237 P. 284, 50 A. L. R. 316; *Carden* v. *Ensminger,* 329 Ill. 612, 161 N. E. 137, 58 A. L. R. 1256, and note thereunder entitled "Scope or extent, as regards books, records, or documents to be produced or examined permissible in order of inspection."

That part of the order requiring the witness to bring "all original books, records and papers of the * * * Bond * * * Corporation pertaining in *any manner* to its business *since the date* of its organization" was too broad and sweeping, hence was of no effect, and the witness was not required to obey it. As to the production of the minute book which witness refused to produce because *he* deemed it had no bearing on the transactions: The plaintiffs at such juncture should have cited him into court to show cause why he should not produce the minute book and be examined in regard to it, whereupon the court, in determining the question of whether he was "bound by law to produce it in evidence", would proceed as if the book had been summoned to the court. The District Court had the opportunity to determine the question of relevancy when the witness was before it on or about March 8th, after it was known that

the witness refused to produce the minute book and known why he so refused. Ordinarily, a witness should produce before the court or officer, a record in his possession and specifically summoned, but there may be circumstances which may excuse the production. *Amey* v. *Long*, 9 East 473, 485; Chamberlayne, Vol. 5, page 5127 note.

Perhaps the only way the witness here could prevent the Corporation's Minute Book from indiscriminate examination, had it once been brought before the notary, was to refuse to produce it or to deliver it to counsel. This refusal then served as the basis to transfer the matter from the notary to the court. But it should not have been done by arresting the witness and presenting him to the court under arrest.

Since that part of the order of June 2nd, which pertains to the minute book is a valid order, so far as appears on its face, and since the matter is still within the jurisdiction of the lower court to inquire or to permit inquiry into the matter of relevancy of the minute book or any of its parts, the writ of prohibition will be discharged with instructions to proceed as herein indicated.

The order for Evans' arrest being unlawful, the part of the order of June 2, 1939, requiring Evans to pay $6.90 which represents the costs leading up to the taking of the deposition, service of the order to show cause, citation, and warrant of arrest is also unlawful and must fall. Because these proceedings were necessary, largely because of the failure of the court to make the inquiry herein designated on March 8th, each party is to bear its own costs.

MOFFAT, C. J., and LARSON, McDONOUGH, and PRATT, JJ., concur.