## MAYERS v. BRONSON, Judge, et al.

No. 6252. Decided June 10, 1941. (114 P. 2d 213.)

*Ball & Musser* and *Burton W. Musser,* all of Salt Lake City, for plaintiff.

*Garfield O. Anderson, Richard L. Bird, Jr.,* and *Grant A. Brown,* all of Salt Lake City, for defendants.

WOLFE, Justice.

Plaintiff sued out a temporary writ of prohibition, staying the lower court from proceeding with the threatened enforcement of a contempt order on the ground that the order was made without power and authority. The questions raised are (1) whether the court had power to make the order and (2) if not, whether prohibition lay. The questions will be decided in reverse order. The facts are as follows: Alton R. Mayers is the son of Nellie R. Mayers, deceased, and executor of her estate, she having died on June 11, 1939. Her estate is in probate in the District Court. On the 8th of January, 1940, the Tax Commission sought to subpoena Alton R. Mayers directing him to appear before the Tax Commission on January 15, 1940, and bring with him certain papers and documents and to submit himself to examination concerning certain property claimed by the Commission to be subject to the inheritance tax. Mayers wrote the Commission that he had been advised by counsel not to respond to the subpoena because the Commission had no power to issue it. Mayers failed to appear. The Commission, in accordance with Sec. 104-14-15, R. S. U. 1933, reported this fact to the District Court by sworn petition. Upon the basis of this petition an order was issued out of the District Court ordering Mayers to appear and show cause why he should not be held for contempt. Mayers appeared by counsel; demurred and answered the petition. The demurrer was on the ground that the Commission's petition for the order to show cause did not state facts sufficient to constitute a cause of action. Defendant herein makes point of the fact that neither the demurrer nor answer to the petition to show cause raised the question of the jurisdiction of the

District Court. A demurrer based on the ground that the petition does not state a cause of action does not ordinarily raise the question of jurisdiction. The court may have jurisdiction even though the pleading fails to make out a case in regard to the subject matter in reference to which the court's jurisdiction is involved. *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377. The question of the court's jurisdiction to entertain and conclude as to the Commission's power to subpoena, and the court's jurisdiction to commit for contempt on an erroneous finding of power will be considered hereunder in connection with the question as to whether an application for a writ of prohibition to this court lies.

To proceed with the history of the case in the lower court: After hearing on the issues raised by the petition for the order to show cause, the demurrer and answer, the District Court, the Hon. M. J. Bronson presiding, decided that the Commission had authority to issue the subpoena. On March 29, 1940, Judge Bronson adjudged plaintiff guilty of contempt and gave him until April 8, 1940, to purge himself of the contempt by appearing before the Tax Commission, or if he did not so appear to return to the court on the same day for sentence on the adjudicated contempt. By agreement the date of execution was continued until May 8th. A motion to quash the judgment of contempt was, in the meantime overruled. The petitioner on May 7, 1940, filed his petition for a writ of prohibition. A temporary writ was issued. The argument is as to whether it should be made permanent.

Defendants in this court demurred to and answered the petition for a writ of prohibition and moved to dismiss on the ground that in no case should the writ issue because there is a plain, speedy and adequate remedy in the ordinary course of law regardless of whether the ■ District Court acted with or without power. We have held that even where there is jurisdiction we will entertain the application for the writ if there is no plain, speedy and adequate remedy at law. *Atwood* v. *Cox*, supra. We have

also held even where there is not jurisdiction but a plain, speedy and adequate remedy at law, we will not entertain the writ. Hence, the important question is: Is there an adequate remedy at law?

In *State ex rel. Board of County Commissioners* v. *Superior Court of Washington for King County,* 73 Wash. 296, 131 P. 816, 817, it was said:

"In *State ex rel. Miller* v. *Superior Court,* 40 Wash. 555, 82 P. 877, 2 L. R. A. (N.S.) 395, 111 Am. St. Rep. 925, after reviewing many cases in this court upon the question here presented, we held that the extraordinary writ of prohibition would not lie where there was an adequate remedy by appeal, *and that the adequacy of the remedy by appeal is the true test in all cases, and not the mere question of jurisdiction or lack of jurisdiction in the court below to render the judgment,* and that the adequacy of the remedy by appeal does not depend upon a mere question of delay or expense. See, also, *State ex rel. Peterson* v. *Superior Court,* 67 Wash. 370, 121 P. 836." (Italics added.)

The defendants contend that there is an adequate remedy by appeal. Its contention is twofold: First, that Mayers could have appeared before the Commission and refused to answer and then under *Evans* v. *Evans,* 98 Utah 189, 98 P. 2d 703, the matter be taken to the District Court. But if Mayers had appeared and then refused to answer on the ground that the Commission had no power to subpoena, the Commission would have petitioned the court for an order to show cause why he should not be committed for contempt, and we would have had up at a later stage exactly the same question we have now, and exactly the same procedure would have been gone through in order to get the question here so that if after the lower court had made its order requiring him to *answer* or appear to be sentenced for contempt, we would still be required to determine whether appeal would be adequate just as we are now required to so determine on the court's order to *appear* to testify and produce certain records or be sentenced for contempt. We cannot see how going one step further before he raised the question would have given

Mayers any more adequate remedy by appeal than he now has.

The second ground for contending that Mayers has an adequate remedy by appeal is more substantial and troublesome. This is the claim that Mayers may refuse to appear and then come to the court for sentence and take an appeal from sentence. In a civil contempt the appeal ■ would stay the sentence. *State ex rel. Board of Commissioners* v. *Superior Court,* supra. But the difficulty in that situation is that the petitioner would be required to let the proceeding against him go on to such a point, where if he appealed and lost he would have to submit to sentence. He would try out his right at the peril of confinement. The petitioner is not required to put himself in such position. It is not the case of having to submit to the ordinary judgment in order to have rights tried out in the appellate court. Every person must thus wait until judgment to try out the right at the peril of finding himself ultimately wrong. But where the matter involves a restraint of personal liberty the case is different. It cannot there be said that he must allow the case to go on to ultimate judgment, that is actual sentence, for contempt and that he then has an adequate remedy by appeal. While the judgment may be suspended by supersedeas, if the appellate court finds the lower court to be correct he has nothing else to do but submit to the confinement. To require him to test out his rights on such gamble does not furnish a plain or adequate remedy at law. But if at the time the order is still in the alternative he sues out a writ of prohibition and is found to be wrong, he may still purge himself by compliance. Under the case of *Attorney General* v. *Pomeroy,* 93 Utah 426, 73 P. 2d 1277, 114 A. L. R. 726, he may try an intermediate appeal from the alternative order, which is equivalent to prohibition, but the court might use its discretion and refuse to entertain the appeal. This is itself a risk he need not take. It was held in *Cobbledick* v. *United States,* 309 U. S. 323, 60 S.

Ct. 540, 541, 84 L. Ed. 783, that the "correctness of a trial court's rejection even of a constitutional claim made by the accused in the process of prosecution must await his conviction before its reconsideration by an appellate tribunal," unless the rule of appeal only from final judgments would "practically defeat the right to any review at all." The very purpose of a liberalized right to bring prohibition is to prevent intermediate appeals where such appeals would otherwise be the only means of preventing injustice. *Attorney General* v. *Pomeroy,* supra; *Atwood* v. *Cox,* supra.

The distinction between waiting until the final sentence for contempt is imposed and proceeding by prohibition to prevent such step at the time the order is still in the alternative is neatly illustrated by the cases of *State ex rel. Peterson* v. *Superior Court of King County,* 67 Wash. 370, 121 P. 836, 837, and *State ex rel. Commissioners of King County* v. *Superior Court of Washington for King County,* supra, both written by the same judge. In the first case the order was that a witness, not a party to the action, submit to examination *or* show cause why he should not be punished for contempt of court, the court saying:

"It is argued by counsel for the respondent that an appeal will lie from the order made, and also that, in the event the relator is adjudged guilty of contempt, an appeal therefrom is an adequate remedy. We are of the opinion that the order of the court, requiring the relator to show cause why he should not be punished for contempt, is not an appealable order, because it is not a final order. It is plainly interlocutory, and therefore not appealable. Before the relator may appeal, he must either submit his showing to the court which he has already done, to the effect that he may not be required to appear personally as a witness in the case, or he must refuse to show cause. In either event, the court must enter a judgment against him for contempt, as the order indicates will be done.

"The rule is well settled that prohibition will not lie where the court is proceeding without jurisdiction when there is an adequate remedy by appeal. The adequacy of the remedy is the test to be applied upon applications for such writs. Delay and expense do not affect the adequacy of the remedy. *State ex rel. Miller* v. *Superior Court,* 40 Wash. 555, 82 P. 877, 2 L. R. A. (N.S.) 395, 111 Am. St. Rep. 925.

In this case it is apparent that the trial court made the order complained of without authority of law, that the order is not an appealable order, and that the court will adjudge the relator in contempt of court unless this writ is issued. The relator may, no doubt, appeal from a judgment of contempt; but before he may do so he must be fined and possibly taken from one county to another and imprisoned, in direct violation of the statute. Section 1215 supra. We are of the opinion, therefore, that such remedy is not adequate."

In the second case the relator waited until the final order directing his arrest and imprisonment was made before application for prohibition. The court held he had an adequate remedy by appeal because if he lost that appeal he would be in no different situation that if he lost the case on a writ of prohibition. The court said:

"In the case last cited [the Peterson case], where the writ was applied for on a show cause order which threatened the relator in that case with punishment for contempt, we held that such order was not an appealable order, and that the relator could not be required to await a final order, and that a remedy by appeal was not adequate, and for that reason the writ issued. But in this case the final order was made before application for the writ. So that the question before us now is whether the relators have an adequate remedy by appeal. We think there can be no doubt upon this question, for the statute (section 1062, Rem. & Bal. Code) provides as follows: 'Either party to a judgment in a proceeding for a contempt may appeal therefrom in like manner and with like effect as from judgment in an action. * * *' See, also, *State ex rel. Martin* v. *Pendergast*, 39 Wash. 132, 81 P. 324; *State ex rel. Olson* v. *Allen*, 14 Wash. 684, 45 P. 644; *State ex rel Denham* v. *Superior Court*, 28 Wash. 590, 68 P. 1051."

The language in *Alexander* v. *United States*, 201 U. S. 117, at page 122, 26 S. St. 356, at page 358, 50 L. Ed. 686, where the court refused to entertain *an appeal* from an interlocutory order requiring a party to do an act, even though questionably within the jurisdiction of the lower court, must be construed as confined to appeals and not writs of prohibition. The Supreme Court there said

"let the court go farther, and punish the witness for contempt of its order,—then arrives a right of review; and this is adequate for

his protection without unduly impeding the progress of the case. * * * This power to punish being exercised, the matter becomes personal to the witness and a judgment as to him. Prior to that the proceedings are interlocutory in the original suit."

We can agree that an intermediate appeal should not be permitted but we have serious doubts as to the statement that if he waits until he is punished for contempt in every case he had an adequate procedure for his protection. The Washington Court did not so think; nor do we.

The Commission cites *Crowther* v. *District Court*, 93 Utah 586, 54 P. 2d 243 as in point. But the facts in that case show that Crowther and Jorgenson had been required by the court to testify before the notary public; that they refused to obey the order *unless* their fees were paid; that thereupon the court cited them in, not on an alternative order to appear before the notary on a certain date *or* return to the court to be punished for contempt, but for the purpose only of requiring them to show cause why they should not be punished for contempt. Certainly they would be in no better position if they brought prohibition than if they submitted to sentence and appealed. If this court had entertained the writ of prohibition and they had won, they would have likewise won if they had submitted to sentence, and appealed and won. And if they had lost on the prohibition proceedings in this court they would be before the lower court still for sentence, which is exactly where they would be if they had appealed and lost. The writ of prohibition was no more adequate in such case than appeal, because in either case the matter had gone to a point where they could try their rights only at their peril. They could have submitted to arrest and confinement and sued out a writ of habeas corpus and had the question of the court's authority to commit them for contempt determined. That was equally as adequate as appeal or prohibition where the proceedings had gotten to the stage when the writ of prohibition was asked for in the Crowther case. It was then beyond the stage where prohibition would have saved the

petitioners from any situation where appeal was not equally adequate. Prohobition lies where there is not an adequate remedy at law, the implication being, of course, that prohibition is adequate, or at least more adequate, than ordinary remedies. But where prohibition is no more adequate than appeal, the petitioners will be relegated to the latter.

It remains to say a word about the demurrer in the lower court. It did not challenge the jurisdiction of the lower court to entertain the petition of the Tax Commission, as it well could not. The court certainly had authority to entertain the petition and determine whether the Commission had power to subpoena and if it so found to order Mayers to appear before the Commission for examination, even though its conclusions were erroneous. *Atwood* v. *Cox*, supra. Indeed such is the convenient and natural way of determining such questions and compelling obedience. *Woolley* v. *Wight*, 65 Utah 619, 238 P. 1114, 41 A. L. R. 433.

The parties have not raised the question as to whether disobedience of the order of the Commission is a "contempt," and we therefore expressly refrain from deciding it. Suffice it to say that the citation of the lower court in this case requiring plaintiff Mayers to appear and show cause why he "should not be held in contempt of court" followed by the alternative order to appear before the Tax Commission to testify and produce certain records or to appear and be sentenced for contempt, indicates that plaintiff is not to be punished for contempt until he refuses to obey the order of the court. We refer the reader to the following authorities which hold that the party is not in contempt until he refuses to obey the order of the court: *Interstate Commerce Commission* v. *Brimson*, 154 U. S. 447, 487, 14 S. Ct. 1125, 38 L. Ed. 1047; *State* v. *Ryan*, 182 Mo. 349, 81 S. W. 435; *State* v. *Martin*, 125 Okl. 24, 256 P. 681; "Administrative Law" by Gellhorn, pp. 66, 67.

Inasmuch as both parties desire a determination of the case on its merits, we now proceed to the main question.

Did the Commission have power to subpoena Mayers? We think it did. The Tax Commission was created pursuant to Constitutional Amendments passed on November 4, 1930, by Chap. 53, Laws of Utah 1931, which took the form of amending sections of the 1917 Compilation (C. L. Utah 1917) dealing with the creation of the Board of Equalization which the Tax Commission supplanted. Chap. 53 provided for the creation, terms of office, salary, vacancies, employees, powers and duties, etc. The powers and duties were much broader than those of the old State Board of Equalization in order to encompass duties prescribed by Sec. 11 of Article XIII of the Constitution which provided for the establishment of the Tax Commission and gave it power to "administer and supervise the tax laws of the State." The State Board of Equalization had only power with reference to tangible property and limited powers in that respect.

Sec. 5984, C. L. Utah 1917, as amended by subsection 15, Chap. 53, p. 231, Laws Utah 1931, reads:

"15. To examine all records, books, papers, and documents, relating to the valuation of property of any corporation or individual, and to summon witnesses to appear and give testimony and to produce records, books, papers, and documents relating to any matter which the tax commission shall have the authority to investigate or determine." (Italics added.)

The words "and to summon witnesses to appear and give testimony and to produce records, books, papers, and documents relating to any matter which the tax commission has authority to investigate or determine," (Italics added) should be considered as meaning what they say and as intended to assist in effectuating the total power to "administer and supervise the tax laws of the State" of Utah rather than as applicable only to the Commission's powers in respect to tangible property. These powers are contained in the general powers of the Commission and as a part of the act creating it. Certainly, it would be natural and reasonable to give to the Commission as part of its gen-

eral powers at that time all those powers which it might need presently and in the future properly to carry on its work. Indeed, it would be deviating from the plain meaning of the language and from what we might suppose the legislature would reasonably and logically do, to limit the application to the Commission's power in reference to tangible property. In that regard it will be noted that the 1917 Compilation gave the State Board of Equalization the power "to issue subpoenas for the attendance of witnesses or production of books before the board, or any member thereof." § 5984, subsec. 11. That power was in aid of the limited powers of that Board and coextensive therewith. Certainly subsection (15) of Sec. 5984, C. L. Utah 1917, as amended by Chap. 53, Laws of Utah 1931, which starts out with a power to examine records, etc., relating to the *valuation* of property and ends with a general power to summon witnesses to produce records, etc., relating to *any* matter which the Tax Commission shall have authority to investigate, must by the same token be considered as an aid to the enlarged powers of the Commission and coextensive therewith.

The fact that in the Revision of 1933 the sections creating the Tax Commission and giving it general powers were inserted in the chapter dealing with assessment of property under the title Revenue and Taxation, is of small moment as compared to the overbalancing arguments the other way. Certainly if Chap. 53, Laws Utah 1931, set up the Tax Commission as an entity with powers sufficient to effectuate the mandate of the Constitution, there is little reason to hold that the mere arrangement in the Revision was meant to limit those powers to the valuation and assessment of tangible property and the equalization of the same. Moreover, there appears to be a plausible reason why the provisions creating the Tax Commission together with those provisions generally imposing duties and giving powers for general purposes were sandwiched in the chapter on Assessment of Property (tangible). The Code Com-

mission proceeded with the assembling of all the provisions with respect to the tangible property under Title 80 to the point where the Tax Commission's powers and duties attached. At that point, to wit, when it had concluded with the duties of the County Assessor, it had the choice of (1) going on with Sec. 80-5-47 which dealt only with the Tax Commission's duties regarding the assessment of tangible property, or (2) setting out all the provisions creating the Tax Commission and prescribing its general duties and powers instead of placing those provisions in a separate chapter. Having thereafter to refer extensively to the Commission, it chose to insert the provisions institutionalizing it at the place it did.

Sec. 80-12-37, R. S. U. 1933 provides:

"Any person having knowledge of property liable to such tax, against which no proceeding for enforcing collection thereof is pending, shall report the same to the state tax commission, and it shall be its duty to *investigate the case*, and if it has reason to believe the information to be true, it shall forthwith institute proceedings for the collection of the same." (Italics added.)

Thus the power to investigate was implemented by the power to summon persons and records given by subsection (16) of Sec. 80-5-46. From what has been previously said the contention that in 1931 the Tax Commission had no duties to perform in reference to inheritance taxes has been answered.

Point is made that the District Court has power to fix and determine the amount of inheritance tax and the Commission only power to collect it. The court's power to fix the tax was retained because in most cases the tax is collectable from a decedent's estate which is administered under supervision of the probate division. The tax is a charge against the estate, hence the final adjudication by the court having jurisdiction of the estate makes certain the charge which the administrator must pay. But there is nothing in such provision which makes the investigatory power by the Tax Commission inconsis-

tent. The State appraisers appointed by the District Court appraise the property inventoried, the Tax Commission, instead of the County Clerk (who was formerly charged with doing it but had no adequate machinery to accomplish that duty) has power to investigate for undisclosed property which should also serve as a measure of the inheritance tax, the court has power to fix the tax, and the Commission has power to proceed to collect. Each agency is given the function it is best suited to perform. The powers form a mosaic with the powers articulating. Such was the intent of the lawmakers.

The powers of investigation in order that the commission may ascertain if there is property *not* included in the inventory and appraisement must not be confused with the powers of the Commission to challenge the inventory or appraisement by filing objections. The Commission may be compelled to use its investigating powers in order to determine whether it should file objections to the inventory and appraisement which form the basis of the fixing of the tax by the court.

If petitioner concludes that the Tax Commission is at any time proceeding beyond its powers of investigation by its questions and explorations into the records of the petitioner, he may have his day in court under *Evans* v. *Evans,* supra. The petitioner urges that the petition for the order to show cause in the lower court did not state facts sufficient to constitute a cause of action for the reason that

"it is nowhere therein alleged (1) that the Tax Commission had authority to investigate the inheritance tax liability of the estate of Nellie R. Mayer, deceased * * * (2) neither is it alleged therein that said estate owned the property therein referred to as being located at 41-43 Broadway in Salt Lake City; and (3) neither is there any allegation concerning the value of said property or tending to show that said property might be subject to inheritance tax liability."

Since a petition may be deficient in allegations without affecting the jurisdiction of the court, and none of the alle-

gations said to be lacking were necessary to confer jurisdiction, the question of overruling a general demurrer to the petition in an action which attacks ▮▮ jurisdiction such as this would not ordinarily be reviewable. *Atwood* v. *Cox,* supra. However, it may be said that it is not necessary for the Commission to allege its authority. This is a legal question to be decided from the pleadings. Nor is it necessary to allege the ownership of certain property or its value for those may be the very questions which the Commission by its investigation may seek to discover.

However, the petition in the lower court did fail to state what connection Alton R. Mayers had with the estate. The petition should show that there was a reasonable basis for issuing the subpoena. But as before stated, ▮ such omission is not reviewable in this proceeding.

The temporary writ of prohibition is recalled.

McDONOUGH and PRATT, JJ., concur.

MOFFAT, Chief Justice (dissenting).

Plaintiffs and defendants have each made separate statements of the facts. Nellie R. Mayers died June 11, 1939. Her estate is being probated in the Probate Division of the Third Judicial District Court in and for Salt Lake County. Alton R. Mayers is one of the executors and one of the heirs. As to these facts there is full agreement.

The petition for warrant or order to show cause does not state facts sufficient to invoke the jurisdiction of the district court to justify the issuance of the warrant or order to show cause. It reads:

"I. The State Tax Commission alleges that it is a body politic, created by virtue of the Constitution and laws of the State of Utah, and is charged with the duty, among other things, of administering the provisions of Chapter 12, Title 80, Revised Statutes of Utah, 1933, as amended, otherwise known as the Inheritance Tax Law, and of investigating the taxability of transfers of property thereunder.

·"II. That under the provisions of Section 80-5-46, the State Tax Commission is given the power, among other things, to subpoena witnesses to appear and give testimony and to produce records, books, papers and documents relating to any matter which the Tax Commission shall have authority to investigate or determine.

"III. That Nellie R. Mayers died June 11, 1939, and at the time of her death and for many years prior thereto was a resident of Salt Lake County, Utah; that the State Tax Commission is now attempting to investigate the inheritance tax liability of the Estate of Nellie R. Mayers, deceased, insofar as the property located at 41-43 Broadway, Salt Lake City in concerned. That in connection with its investigation the State Tax Commission caused to be issued on the 8th day of January, 1940, a subpoena to Alton R. Mayers, in the form and substance hereto attached and marked Exhibit 'A' and by reference made a part hereof. That said subpoena was duly served upon Alton R. Mayers on the 10th day of January, 1940, commanding him to appear before the State Tax Commission on the 15th day of January, 1940, at 10:00 o'clock A. M. and bring with him the records, books, papers and documents therein set forth; that notwithstanding the premises, said Alton R. Mayers has wholly neglected, failed and refused to so appear."

Paragraph III above quoted contains no allegation that may be considered as a basis that any matter or issue is pending before the State Tax Commission but indicated merely that it desires to investigate inheritance tax liability.

Without now discussing the question of authority involved in the statute relating to issuance of subpoenas by the Tax Commission, let us examine the law as to the procedure in matters relating to the levy and collection of an inheritance tax.

A number of the sections of Chapter 12 of Title 80, Revised Statutes of Utah, 1933, are of similar import to some of the sections in the Probate Code in Title 102, Revised Statutes of Utah, 1933. (See Sections 102-7-1 and 5; 102-9-19; 102-11-18 and 19 and 102-12-10.)

Under paragraph I apparently the Commission claims to be charged with the duty of administering "Chapter 12, Title 80, Revised Statutes of Utah 1933, as amended." Let

us determine whether the State Tax Commission is charged with the duty of administering Chapter 12, supra, or whether that is a matter exclusively in the jurisdiction of the Probate Division of the District Court. Unless otherwise indicated, the sections of the statutes referred to are Revised Statutes of Utah, 1933.

Section 80-12-1 defines "executor" as follows:

"The term 'executor' for the purposes of this chapter means the executor or administrator or testamentary trustee of a decedent's estate, or, if there is no executor, administrator or trustee appointed, qualified and acting within this state, then any person in actual or constructive possession of any property of the decedent."

"Executors" are officers of the Probate Division of the District Court. In this chapter, as in the Probate Code, the procedure for securing a complete inventory and appraisement of the property of decedent's estates and all the proceedings relating to inheritance taxes are based upon the fact that someone died possessed of an estate.

Section 80-12-2, as amended, fixes the per cent of levy upon the specified net amounts of estates. This is fixed and determined as a matter of law and is used only as a multiplier in ascertaining the amount of the tax by using the respective percentages fixed by law and applying them to the bases determined by the court when the amount of the estate has been determined by appraisement by appraisers appointed by the court.

Section 80-12-3 provides a procedure for the determination of the gross amount of an estate. The values therein referred to are determined by ascertaining by the court the value at the time of death of all property within the jurisdiction of this state which shall pass to another by testamentary disposition, or the law of inheritance or succession, or by conveyance made in contemplation of death, or intended to take effect in possession or enjoyment at or after death. The values referred to in this section are not the values used when considering the subject of inheritance

tax or determining the property or amount to be taxed, but when the net estate has been ascertained this value as indicated in *Larson* v. *MacMiller*, 56 Utah 84, 189 P. 579, may then be used as a measure of the tax imposed.

Sections 80-12-4, 5 and 6 relate to transfers of property in contemplation of death, transfers by right of survivorship and transfers to executors in lieu of compensation.

Section 80-12-7 provides that in determining the amount of tax to be paid the debts of the estate shall first be deducted and the remainder shall be the *net estate*. This is the amount as determined by the court the percentage of which is used as the other measure or amount to determine the tax provided by Section 80-12-2.

Section 80-12-8 defines "debts" and Section 80-12-9 relates to the determination of the taxable value of foreign estates having property within this state, and the court of this state having ancillary jurisdiction of the property of estates having property within this state. The executor is required to make a statement in affidavit form as to property within this state, as to its value, with indebtedness statements, so the proportionate value subject to tax, if any may be determined. In this section the first reference to the State Tax Commission in Chapter 12 is made and this relates to the approved and allowed claims by the court with this clause relating to the the Tax Commission "or unless allowed by the state tax commission" in case of foreign estates where the property taxable within this state consists of *"personal property* only."

Section 80-12-9 has a similar provision which provides:

"that in all * * * cases where the property within this state consists of personal property only, the statements hereinbefore [in this section relating to foreign estates] provided for shall also be filed with the state tax commission."

Section 80-12-10 provides the details the "executor" is required to report to the court upon his appointment and qualification.

Section 80-12-11 provides:

"At the time of filing the inventory of the estate as provided in section 102-7-1, each executor shall make and return to the clerk, under oath, a full and detailed report as provided in the next preceding section, any will to the contrary notwithstanding, and upon his failure to do so, the clerk shall forthwith report his delinquency to the district court, if in session, or to a judge thereof, if in vacation, for such order as may be necessary to enforce an observance of this section."

Section 80-12-12 requires the executor to include property transferred within three years prior to the death of the decedent, and reads:

"When property, either real or personal, has been transferred within three years prior to the death of the decedent, it shall be the duty of each executor to make and file an inventory of the same. In case of failure to make such report within the statutory period, a penalty of ten per cent shall be added to the tax."

Section 80-12-13 provides:

"If it appears from the inventory or report filed that the real estate listed therein, or any part of it, is subject to tax hereunder, it shall be the duty of the executor to cause notice of the lien to be entered upon the lien book in the office of the clerk of the court in each county where each tract of such real estate is situated, but no conveyance of such real estate or of any interest therein which is subject to such tax, before or after such entry, shall discharge the real estate so conveyed from such lien."

Herein is where the provisions of Section 80-12-27 come into use in event of failure by the "executor" to pay the inheritance tax fixed by the court and enforce a lien against the property wherever located within the state.

Section 80-12-14 provides:

"When property of a decedent is transferred in contemplation of death or intended to take effect in possession or enjoyment at or after his death, or passes to a survivor or survivors by right of survivorship, and no proceedings in probate are instituted, *the state tax commission may apply to the court for the appointment of an administrator for the collection of the tax herein provided for*. The

compensation of such administrator shall be fixed, and any reasonable attorneys' fee expended by him allowed, by the court." (Italics added.)

Section 80-12-15 provides for the appointment in each county by the district court annually of three competent residents of the county to act as appraisers of property sought to be charged with an inheritance tax. Such appraisers are not to act in the appraisement of estates as provided for by section 102-7-2, which section relates to appraisement of estates in the ordinary course of probate of estates not subject to the inheritance tax law, or if their findings show the amount of the estate to be such that an inheritance tax may be due then the appraisers provided for in Section 80-12-15 act.

Section 80-12-17 provides:

"When it appears from the inventory of an estate that there is property which may be subject to the tax, the clerk shall forthwith issue a commission to the appraisers, who shall fix a time and place for appraisement."

Section 80-12-18 provides for prompt appraisement and the section following, 80-12-19, again refers to the State Tax Commission as follows:

"It is the duty of all appraisers appointed under the provisions of this chapter *to forthwith give notice to the state tax commission and other persons known to be interested in the property to be appraised* of the time and place at which they will appraise such property, which time shall not be less than ten days from the date of such notice. The notice shall be served in the same manner as summons in civil actions, and if not practicable to so serve the notice, they shall apply to the court or a judge in vacation for an order as to notice, and upon such service of notice and the making of such appraisement, the notice, return thereon and appraisement shall be filed with the clerk, and a copy of such appraisement shall be filed by the clerk with the state tax commission." (Italics added.)

Section 80-12-20 opens the door full width to permit the State Tax Commission or any one interested to present

to the court any matter affecting the inclusion, exclusion of property or fairness of the appraisement to the court for determination of the value to be placed upon property for inheritance tax purposes. It is therein provided:

"*The state tax commission* or any person interested in the estate appraised *may*, within thirty days after an appraisement is filed, *file objections to the appraisement. The hearing thereon shall be deemed an action in equity.* If upon such hearing the court finds the amount at which the property is appraised is at its value on the market in the ordinary course of trade at time of death, and that the appraisement was fairly and in good faith made, it shall approve such appraisement, but if it finds that the appraisement was made at a greater or less sum than the value of the property in the ordinary course of trade at time of death, or that the same was not fairly or in good faith made, it shall set aside the appraisement appoint new appraisers, and so proceed until a fair and just appraisement of the property is made." (Italics added.)

When this is done the value of the estate for inheritance tax purposes is determined. If any exceptions have been taken the Tax Commission or anyone interested may appeal to the Supreme Court upon the question of the appraisement made and approved by the District Court. If no objections are filed the appraisement made and approved by the District Court shall stand. Section 80-12-21. Then sections 80-12-22 and 80-12-25 provided for tax lien and method for satisfying or clearing same.

Section 80-12-26 is an interesting one in that it provides for a collection of the tax by a sale of such of the property of the estate as may be necessary to clear the estate of tax claims. It provides:

"Property liable for the payment of the tax herein provided for may be sold *in probate proceedings* in the same manner as real estate is sold for the payment of the debts of a decedent; and to collect any such tax the *state tax commission may foreclose the lien* given to secure the payment thereof."

Again the State Tax Commission may become a party in a court proceeding for the collection of an inheritance tax under 80-12-17.

When the amount of the inheritance tax has been determined, if necessary, and the liens attached if the property is not sold in the probate proceedings, (Sections 80-12-24, 25 and 26) or paid by the executor, then the State Tax Commission as ex officio collector of such taxes may institute proceedings for the collection of such taxes. By the provisions of Section 80-12-28,

"the state tax commission may demand from executors such information as may be necessary to verify the correctness of the amount of the tax and *interest*, and when demanded they shall supply certified copies of such parts of their reports as may be demanded."

What is here referred to as "such information" is clearly information that has been furnished to the court because the following sentence of the same section provides:

"Upon refusal [of executors] to comply with such demand of the state tax commission, *it is the duty of the clerk of the court to comply with such demand,* and the expenses of making such copies and transcripts shall be charged against the estate, as are other costs in probate."

It is then finally provided that no final settlement of the account of any executor shall be accepted or allowed unless it is shown, and the court shall find, that all taxes imposed by the provisions of chapter 12 have been paid and the receipt of the state treasurer for such tax shall be the proper voucher for payment. What seems to be a complete refutation of the allegations of the petition or complaint of the State Tax Commission that it is charged with the duty, among other things, of *administering* the provisions of chapter 12 of Title 80, as amended, is found in the provisions of section 80-12-35. There are provided specific duties of clerks of district courts in aid of collection of inheritance taxes with details as to the bookkeeping with reference thereto; the maintenance of a lien book and other duties imposed upon the clerk (section 80-12-36 to 42). Section 80-12-27 authorizes the State Tax Commission to represent the state in all matters pertaining to the collection of such

taxes as ex officio collector of taxes when such taxes have been determined to be due.

"Any person having knowledge of property liable to such [inheritance] tax, *against which no proceeding for enforcing collection thereof is pending*, shall report the same to the state tax commission, and it shall be its duty to investigate the case, and if it has reason to believe the information to be true, it shall forthwith institute proceedings for the collection of the same." Section 80-12-37.

I think any reading of Chapter 12 of Title 80 referred to makes it clear the fixing of the amount and bringing into the taxable field any property subject to inheritance tax is vested in the district court. Certain specific steps may be taken by the Tax Commission in court proceedings pending where there may be questions as to whether certain property was not included and questions may be raised as to the fairness or equitable determination of the amount of tax then the State Tax Commission is authorized to appear as a party to the proceeding and if dissatisfied with the determination of the appraisers or any change thereof as determined from the evidence by the court then the State Tax Commission has a right of appeal.

Paragraph II of the petition or complaint alleges that under the provisions of Section 80-5-46 (subsection 16) the State Tax Commission is given power

"to subpoena witnesses to appear and give testimony and to produce records, books, papers and documents relating to *any matter which the tax commission shall have authority to investigate or determine.*"

The petition underscores "any matter." We underscore "which the tax commission shall have authority to investigate or determine." If the other part of the sentence were not there and the implication suggested from the emphasis on "any matter" the question may arise, Are there any limits to the subject matter or persons beyond which the investigatory powers of the commission were not extended? If, however, the position herein taken, that the State Tax Commission has not been vested either by Constitution or

statute with power to levy, assess, or determine the rate of tax, nor the amount or value of the estate subject to the inheritance tax, the first of which is fixed by statute and the second is determined by the court, what then is "any matter" the State Tax Commission "shall have authority to investigate or *determine*," with respect to inheritance tax determinations or investigations? There are two matters and two only for final determination: what is subject to the inheritance tax and what is not?

It is true that the State Tax Commission is given constitutional authority to administer and supervise the tax laws of the state and statutory authority

"to examine all records, books, paper and documents relating to the valuation of property of any corporation or individual, and to subpoena witnesses to appear and give testimony * * * relating *to any matter which the tax commission shall have authority to investigate.*"

Inheritance tax determinations are not within the authority. The sentence following the one just quoted then says:

"The tax commission or any party may in any investigation cause depositions of witnesses to be taken as in *civil actions.*"

A definite procedure is provided.

It does not appear that any proceeding or issue is pending before the State Tax Commission. On the contrary it appears that no issue as to the value of an estate or the rate or amount thereof nor the amount of inheritance tax may be made an issue before the State Tax Commission or brought before it for determination by the State Tax Commission or otherwise.

Before any court or tribunal

"The pendency of some action or proceeding is necessary in order to warrant the issuance of subpoenas for witnesses, which in order to be valid, must be issued for the purpose of compelling production

of testimony or other evidence having materiality to some matter which is lawfully under investigation therein." 70 C. J. 45, sec. 25.

. In the case of *Chambers* v. *Oehler et al.*, 107 Iowa 155, 77 N. W. 853, 854, a justice of the peace had issued a subpoena upon an affidavit, the justice of the peace being his own clerk. The evidence disclosed there was no action pending in the justices' court at the time the subpoena was issued. The Supreme Court of Iowa said:

"We take it that the pendency of some proceeding in court is necessary in order to warrant the issuance of process for witnesses. There being no case pending in this instance, the justice had no authority to issue a subpoena for a witness."

In so far as anything appears in the record or the petition for the requirement of Alton R. Mayers to appear before the State Tax Commission, it may as well have alleged the State Tax Commission desires to investigate the flow of the Colorado river or how long it will be before the sedimentary deposits will fill the reservoir of Boulder Dam.

The statutes quoted provide a definite and clear method of securing a complete list of all property of a decedent and for determining the amount or value thereof for inheritance tax purposes. When the value has been ascertained and it has been determined whether the estate is subject to inheritance tax, the determination of the amount of the tax as determined under the provisions of section 80-12-2 is automatically levied.

There is no allegation in the petition of the State Tax Commission to the District Court that "the state tax commission * * * within thirty days after an appraisement is filed, filed objections to the appraisement" as required by Section 80-12-20. There is no allegation that an application for a hearing has been made to the court upon any matter relating to the property at "41-43 Broadway, Salt Lake City" nor whether such property is included in or excluded from the inventory, nor whether it should be. There is no allegation that the value of the property, if included, was erroneous, nor that any tax upon it is or may

be imposed or become due. There is no allegation that if an inventory and appraisement has been filed the State Tax Commission overlooked or upon the ground of excusable neglect or mistake failed to file objections in time.

There is no allegation that Alton R. Mayers is or is not the "executor" of the estate of Nellie R. Mayers, deceased, or that he is "in actual or constructive possession of any property of the decedent" or claims any interest in the property described or has information concerning it, or that any issue is pending before the State Tax Commission or elsewhere. Mere investigatory power without some issue presented does not any more authorize an administrative body to use a subpoena power than it does a court. Courts would not issue a subpoena without an action or an issue pending, and compensation paid, tendered or waived. Sec. 28-5-8, R. S. U. 1933 included in Chapter 5, Title 28. A subpoena is an instrument of process putting one under penalty for refusal to obey when properly served to testify as to a pending issue. Without an issue pending the use of process is tyranny. If such procedure or allegations may invoke the judicial power of a court of justice in the imposition of a contempt, the question may arise as to how far we are removed from the procedures of the "Inquisition" or how far we are removed from unlawful searches and seizures under such service. See 12 Am. Jur. 390.

This proceeding is based upon the assumption that the State Tax Commission has power to issue subpoenas. That the statute has authorized the State Tax Commission to issue subpoenas is clear from the statute. The purpose and the occasion for such issuance is not suggested. There are limitations. There must be some issue of fact for determination within the powers of the board to investigate and determine before such power may be used. The use of compulsion for the purpose of securing information against a witness or another must be based upon some proceeding before a tribunal where issues are presented for determination. The cases in support of this proposition are numerous.

Unnecessary clashes between what the citizen in good conscience believes to be his rights and governmental agencies should be avoided. Fundamentally there is a strong presumption against interfering with the personal liberty of a citizen and good cause should exist before he is commanded, even upon compensation for his required time to put aside his own affairs to respond wherein no apparent duty calls. The written line kills but the spirit gives life,— "for the letter killeth but the spirit giveth life."

Prohibition is the proper remedy, in fact the only adequate remedy. No issue was pending before the Tax Commission. It had no authority to require petitioner to appear without an issue pending. The court has no authority to require petitioner to furnish information the Tax Commission has no authority to determine; or in the alternative to surrender himself for contempt. The proceedings were void from the beginning. The complaint or petition fails to state facts sufficient to warrant any action on the part of the court. The facts as revealed by the record and the petition show affirmatively that the court was in error to entertain the petition at all. See *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377.

The writ should be made permanent.

LARSON, Justice.

I concur in the views expressed by Mr. Chief Justice MOFFAT in his dissenting opinion.