[Criminal No. 620. Filed January 7, 1926.]

[242 Pac. 340.]

# F. E. ELLIOTT, Appellant, v. STATE, Respondent.

1. CONSTITUTIONAL LAW — SUNDAY CLOSING LAW WITHIN POLICE POWER, AND NOT INTERFERENCE WITH RELIGIOUS LIBERTY.—It is within the police power, based on preservation of health and promotion of public welfare, to provide for a day of rest, and providing for Sunday as such a day is not an interference with religious liberty.

2. CONSTITUTIONAL LAW—SUNDAY—SUNDAY CLOSING ORDINANCE HELD INVALID AS GRANTING SPECIAL PRIVILEGES.—An ordinance prohibiting the opening on Sunday of stores in certain lines of business, and allowing the opening of those in other lines, *held* not a general Sunday closing ordinance, with reasonable exceptions of works of necessity and charity, but in effect one granting special privileges and immunities to certain classes, while without legal excuse denying them to others, in violation of Constitution, article 2, section 13.

See (1) 37 *Cyc.*, p. 541, n. 22, 23.   (2) 37 *Cyc.*, p. 542, n. 24.

APPEAL from a judgment of the Superior Court of the County of Yuma. F. L. Ingraham, Judge. Judgment reversed and cause remanded, with instructions.

Mr. Will E. Ryan, for Appellant.

Mr. John W. Murphy, Attorney General, Mr. Earl Anderson and Mr. Frank J. Duffy, Assistant Attorneys General, Mr. Henry C. Kelly, County Attorney, Mr. H. H. Baker and Mr. H. Wupperman, for the State.

1. Constitutionality of Sunday laws, see note in 22 L. R. A. 721. See, also, 25 R. C. L. 1415.

2. Validity of classification on Sunday law, see notes in 14 L. R. A. (N. S.) 1259; 32 L. R. A. (N. S.) 1190.

LOCKWOOD, J.—F. E. Elliott, hereinafter called the appellant, has appealed from a conviction for violation of Ordinance No. 37 enacted by the town of Somerton, Yuma county, Arizona, which reads, so far as material in this case, as follows:

"It shall be unlawful for any person . . . conducting or managing any grocery store, butcher shop, or market for the sale of meat, fish, fruit, or vegetables, dry goods store, shoe store, haberdashery, millinery establishment, lumber yard, hardware store, within the town of Somerton, Arizona, to open, keep open or allow to remain or be kept open, such store or place, or to sell or offer or permit to be sold or offered for sale of any goods, wares, or merchandise usually kept or offered for sale by the above-described stores or places of business on any Sunday; and provided, however, that the prohibitions of this section shall not be held or construed to apply to or restrict or prevent the sale at any and all times of drugs, medicines, toilet articles, tobaccos, and cigars, fruit and confectionery, nor to include confectionery stores, ice cream parlors, soda fountains, automobile service stations, dealers in gasoline, oils and automobile accessories, nor the manufacture or sale of ice. . . . Ordinances No. 15 and 33, and all ordinances, or parts of ordinances, conflicting with the provisions of this ordinance are hereby repealed."

Appellant admitted that on the Sunday in question his store was open, and that he sold in the course of his usual trade, among other things, groceries and hardware. A demurrer was interposed to the complaint on the ground that it did not state a public offense, which was overruled by the superior court, and it is agreed by counsel that the sole question before us is as to the legislative power of the town of Somerton to enact the ordinance in question.

There are some five assignments of error which we will not consider specifically, but rather as to the

general issues of law which they present. The principle involved is one of considerable importance, and of first impression in this state, so we shall discuss somewhat fully the constitutional questions raised.   .

The ordinance is one of the type generally known as "Sunday closing laws," and the right of the state to pass legislation of this kind has often been before the courts. The objections raised are usually based upon two propositions: First, that, under the provisions found in most Constitutions securing liberty of conscience, such laws are *per se* unconstitutional; and, second, that the specific statute conflicts with the provisions also generally found guaranteeing equal protection of law to all citizens, and prohibiting the granting of any special privileges or immunities.

The reasons on which general Sunday closing laws are upheld are well stated by Justice FIELD in *Ex parte Newman*, 9 Cal. 502, 519–526. His language has been repeatedly approved by courts of last resort, including the Supreme Court of the United States, and, because of the clarity and irresistible logic of his opinion, we quote therefrom:

"The fourth section declares that 'the free exercise and enjoyment of religious profession and worship, without discrimination or preference, shall forever be allowed in this state.' . . . The statute is prohibitory in its character, and its constitutionality must be determined by the acts it forbids. The inquiry is as to the power of the Legislature, not as to the motives which induced the enactment. That power is exhibited in the clause which provides that no person shall, on the Christian Sabbath, or Sunday, keep open any store, . . . for business purposes. . . . If the exercise of this power is not prohibited to the Legislature by the Constitution, either in express terms, or by necessary implication, it is our duty to uphold the statute. Of its wisdom or policy, it is not within our province to judge. In what manner it conflicts with the fourth section I am unable to

perceive. What have the sale of merchandise, . . . or the business of the artisan, . . . to do with religious profession or worship? There is no necessary connection between them. The petitioner is an Israelite, engaged in the sale of clothing, and his complaint is, not that his religious profession or worship is interfered with, but that he is not permitted to dispose of his goods on Sunday; not that any religious observance is imposed upon him, but that his secular business is closed on a day on which he does not think proper to rest. In other words, the law, as a civil regulation, by the generality of its provisions, interrupts his acquisitions on a day which does not suit him. The law treats of business matters, not religious duties. . . . It is absurd to say that the sale of clothing, or other goods, on Sunday, is an act of religion or worship; and it follows that the inhibition of such sale does not interfere with either. . . . *It does not even allude to the subject of religious profession or worship, in any of its provisions.* It establishes, as a civil regulation, a day of rest from secular pursuits, and that is its only scope and purpose. Its requirement is a cessation from labor. In its enactment, the Legislature has given the sanction of law to a rule of conduct, which the entire civilized world recognizes as essential to the physical and moral well-being of society. Upon no subject is there such a concurrence of opinion, among philosophers, moralists, and statesmen of all nations, as on the necessity of periodical cessations from labor. One day in seven is the rule, founded in experience, and sustained by science. There is no nation, possessing any degree of civilization, where the rule is not observed, either from the sanctions of the law, or the sanctions of religion. This fact has not escaped the observation of men of science, and distinguished philosophers have not hesitated to pronounce the rule founded upon a law of our race.

"The Legislature possesses the undoubted right to pass laws for the preservation of health and the promotion of good morals, and if it is of opinion that periodical cessation from labor will tend to both, and

thinks proper to carry its opinion into a statutory enactment on the subject, there is no power, outside of its constituents, which can sit in judgment upon its action. It is not for the judiciary to assume a wisdom which it denies to the Legislature, and exercise a supervision over the discretion of the latter. . . .

"Authority for the enactment I find in the great object of all government, which is protection. Labor is a necessity imposed by the condition of our race, and to protect labor is the highest office of our laws.

"But [it] is urged that the intention of the law is to enforce the Sabbath as a religious institution. This position is assumed from the description of the day and the title of the act, but [it] is not warranted by either. . . . The power of selection being in the Legislature, there is no valid reason why Sunday should not be designated as well as any other day. Probably no day in the week could be taken which would not be subject to some objection. That the law operates with inconvenience to some is no argument against its constitutionality. Such inconvenience is an incident to all general laws. A civil regulation cannot be converted into a religious institution because it is enforced on a day which a particular religious sect regards as sacred. . . .

"With the motives which operated upon the Legislature to pass the act, we have nothing to do. . . . It is a question of power that we are determining, and whether that power was wisely or unwisely exercised, or from pure or impure motives, is of no moment. If we admit that the law had its origin in the religious opinions of the members of the legislature, we advance nothing in favor of its constitutionality, and concede nothing against it. . . . In twenty-five states of the Union, the statutes of which I have been able to examine, there are laws prohibiting secular business on Sunday, and in every one of these states, their validity has been upheld either by sustaining convictions had under them, or by annulling contracts made in violation of their provisions, or directly upon the question of their constitutionality." *Hennington* v. *Georgia,* 163 U. S. 299, 41 L. Ed. 166, 16

Sup. Ct. Rep. 1086; *Petit* v. *Minnesota,* 177 U. S. 164, 44 L. Ed. 716, 20 Sup. Ct. Rep. 666; *McClelland* v. *Denver,* 36 Colo. 486, 10 Ann. Cas. 1014, 86 Pac. 126; *People* v. *Havnor,* 149 N. Y. 195, 52 Am. St. Rep. 707, 31 L. R. A. 689, 43 N. E. 541; *St. Louis* v. *De Lassus,* 205 Mo. 578, 104 S. W. 12; *Commonwealth* v. *Has,* 122 Mass. 40.

We are of the opinion, therefore, that it is within the police power of the state to provide for one day of rest at periodic intervals, and that it is discretionary with the legislative authority to select the length of the interval and the day upon which that rest shall be taken, and that such a regulation, if not in conflict with other principles of our Constitution, in no manner interferes with religious freedom or liberty of conscience, but is based upon the undoubted right of the legislature to pass laws for the preservation of health and the promotion of the public welfare.

.A law may, however, though not obnoxious to constitutional provisions in regard to religious liberty, violate other principles, such as those set forth in article 2, section 13, of our Constitution, which reads as follows:

"Section 13. No law shall be enacted granting to any citizen, class of citizens, or corporation other than municipal, privileges or immunities which, upon the same terms, shall not equally belong to all citizens or corporations."

It is contended that the ordinance in question, even though it may not restrict religious liberty, does grant special privileges or immunities to some citizens and deny them to others.

There are many cases in which the issue above set forth has been discussed. The decisions have been as varied as the statutes on which the actions arose. But running throughout the best considered opinions we find one general principle adhered to. If the ob-

vious purpose of the act is to grant a general day of rest to the community, even though certain works declared to be of necessity or charity are permitted, it is generally upheld. If, on the other hand, it is apparent that the intent and effect of the law is to prohibit the exercise of certain particular occupations, legitimate and laudable in themselves, while allowing other businesses, not reasonably to be distinguished from those prohibited, to be carried on freely, the statute is usually declared to be unconstitutional. *Chan Sing* v. *Astoria,* 79 Or. 411, 155 Pac. 378; *Ex parte Jentzsch,* 112 Cal. 468, 32 L. R. A. 664, 44 Pac. 803; *City of Denver* v. *Bach,* 26 Colo. 530, 46 L. R. A. 848, 58 Pac. 1089; *Eden* v. *People,* 161 Ill. 296, 52 Am. St. Rep. 365, 32 L. R. A. 659, 43 N. E. 1108.

The principle which governs is well set forth in *City of Pasadena* v. *Stimson,* 91 Cal. 238, 251, 27 Pac. 604, 607:

"The conclusion is, that although a law is general and constitutional when it applies equally to all persons embraced in a class founded upon some natural or intrinsic or constitutional distinction, it is not general or constitutional if it confers particular privileges or imposes peculiar disabilities or burdensome conditions, in the exercise of a common right, upon a class of persons arbitrarily selected from the general body of those who stand in precisely the same relation to the subject of the law."

Most of the cases cited by respondent either recognize this principle expressly, or else the facts of the case necessarily imply it. In *Ex parte Sumida,* 177 Cal. 388, 170 Pac. 823, the ordinance in question carried a general prohibition against "any store . . . or place of business," and in another clause excepted from the general rule certain named businesses which the court held were works of necessity. The same

situation existed in *State* v. *Dolan,* 13 Idaho, 693, 14 L. R. A. (N. S.) 1259, 92 Pac. 995, *Theisen* v. *Mc-David,* 34 Fla. 440, 26 L. R. A 234, 16 South. 321, *Hoffman* v. *Justus,* 91 Minn. 447, 103 Am. St. Rep. 521, 1 Ann. Cas. 91, 64 L. R. A. 510, 98 N. W. 325, and *State* v. *Nicholls,* 77 Or. 415, 151 Pac. 473.

We therefore deduce from the foregoing principles that in the state of Arizona it is competent for the legislature to provide for a general cessation of labor at such times as it may think proper, even though certain specified occupations may be declared exempt from the law as works of necessity and charity, but that it may not prohibit the exercise of businesses or occupations legitimate and lawful within themselves which do not carry inherent reasons for special discrimination, while allowing general privileges to all other similar occupations.

Let us apply this test to the ordinance in question. It is evident from its language that it is not a case of a general cessation from labor with special exemption for reasons of necessity or charity, but rather a special inhibition placed upon certain otherwise praiseworthy and legitimate businesses with a general exemption to all other classes.

We think the language of the court in *Chan Sing* **v.** *Astoria, supra,* applies in this case:

"In our judgment, the classification embraced in the ordinance is arbitrary and unfair, and no substantial distinction exists between those mentioned and those omitted, having in view the object to be attained by the charter, 'to secure the peace and good order of the city and the health of its inhabitants.' It is difficult to conceive that any odor of sanctity hovers about a furniture store or makes it so impeccable that it would be exempt from the police power of the city, while a hardware store should be subject to its scrutiny. . . . Practical justice demands that all who are in the same category should be treated

alike in the exercise of authority for the good order of the community. . . . The grouping must include all who have substantially the same relation to the end to be attained. . . . Mere difference in name is not in every instance a distinguishing characteristic supporting the exercise of the police power against one and not against the other.''

For the same reasons we cannot see why it is a legitimate discrimination to close groceries, shoe stores and hardware stores, while allowing jewelers, dealers in second-hand goods, and tailoring establishments to remain open without restriction; nor does it appear on any theory we can conceive that pawnbrokers and photographers are engaged in works of necessity and charity when butchers and dealers in fruit or vegetables are not.

We are of the opinion that the ordinance in question shows on its face it is not a general ''Sunday closing'' ordinance with reasonable exceptions, but a special one, aimed without any apparent legitimate reason at certain named businesses, and it does, therefore, in effect, grant special privileges and immunities to certain classes of citizens of the state, while, without legal excuse, denying them to others. In view of our opinion on this point, it is unnecessary for us to discuss the other matters raised by the appellant. If the ordinance in question is obnoxious to article 2, section 13, of our Constitution, we need not in this case inquire into the charter power of the town of Somerton to pass a general ''Sunday closing'' ordinance.

For the foregoing reasons the judgment of the lower court is reversed and the cause is remanded to the superior court of Yuma county, with instructions to sustain the demurrer to the complaint.

McALISTER, C. J., and ROSS, J., concur.