BROADBENT et al v. GIBSON et al.

No. 6427.   Decided August 27, 1943.   (140 P. 2d 939.)

54

56

*Christenson & Christenson,* of Provo, for appellants.

*Edward Sheya, Jr.,* of Price, *Grover A. Giles,* Atty Gen., and *A. U. Miner,* Asst. Atty. Gen., for respondents.

WOLFE, Chief Justice.

This is an appeal from a judgment of the district court vacating an alternative writ of prohibition theretofore issued against the defendants for the purpose of prohibiting them from prosecuting the plaintiffs under the so-called Sunday Closing Law, Section 103-53-1 and 2, R. S. U. 1933, now Sec. 103-53-1 and 2, U. C. A. 1943.

The appellants, hereafter called plaintiffs, are copartners and operate places of business at Price and Helper, Utah, under the name of the Carbon Fruit Markets. They were tried and convicted by the Justice of the Peace in Price for violating the Sunday Closing Law by the sale on Sunday of a cantaloupe and a sack of potato chips. Another complaint issued out of the Justice's Court in Helper charging that plaintiffs had violated the Sunday Closing Law by the sale of tomatoes on Sunday. This complaint pends.

When the question of enforcing the Sunday Closing Law against them arose, plaintiffs were not selling their general merchandise and groceries on Sunday, but kept their places of business open for the purpose of selling soft drinks, confections, tobacco, fresh fruits, vegetables, dairy products, and bakery products. Stores primarily designated as and in the business of selling certain, but not all, of these items are permitted by law to remain open on Sunday to sell such merchandise.

The county attorney threatened to file additional charges for each Sunday the plaintiffs stayed open for the purpose of selling any of the items enumerated above.

Plaintiffs filed a petition in the district court for an alternative writ of prohibition against the county attorney

and the Justices of the Peace in Price and Helper. The district court issued the writ and ordered the defendants to show cause why the writ should not be made permanent. After hearing, the writ was vacated. Plaintiffs appeal.

Plaintiffs allege that the Sunday Closing Law is unconstitutional and that any complaint based thereon is likewise void. They, therefore, contend that the courts of the Justices of the Peace and the county attorney were "without jurisdiction, power, or authority to molest, interfere with, file charges against, issue complaints, * * * against the plaintiffs. Plaintiffs further allege that if the writ of prohibition is not issued they will suffer irreparable injury in that they will be compelled either to close their businesses in compliances with the alleged unconstitutional statute, or risk an adverse ruling on its constitutionality and subject themselves to heavy fines and a multiplicity of suits while an appeal on the conviction is pending.

Defendants deny that the statutes in question are unconstitutional, and counter that the plaintiffs have misconceived their remedy; that they are not entitled to the writ because they have an adequate and speedy remedy in the ordinary course of the law.

Sec. 20-5-4, R. S. U. 1933, gives Justices' Courts jurisdiction of all misdemeanors punishable by a fine of less than $300. Violations of the Sunday Closing Law, being punishable by a fine of not less than $5 nor more than $100, come within this general provision. The Justices' Courts in Price and Helper, therefore, have original jurisdiction to entertain charges of alleged violation of these laws, and in pursuance of said jurisdiction, to determine the constitutionality of said laws. The possibility that the Sunday Closing Law may be unconstitutional does not oust these courts of jurisdiction to hear and determine cases involving the constitutionality of the statutes.

A court is not unhorsed of jurisdiction merely because it might make or does make an erroneous holding in regard

to constitutionality, but it may proceed to final judgment regardless of such error. *Atwood* v. *Cox*, 88 Utah 437, 55 P. 2d 377. We must conclude that the justice Courts were not proceeding without jurisdiction.

It is well settled that the writ of prohibition should not issue where there is jurisdiction unless it appears that the petitioners will suffer irreparable injury if forced to employ their remedies in the ordinary course of the law. *Atwood* v. *Cox*, supra; *Allen* v. *Lindbeck*, 97 Utah 471, 93 P. 2d 920; *Mayers* v. *Bronson*, 100 Utah 279, 114 P. 2d 213, 136 A. L. R. 698; *Evans* v. *Evans*, 98 Utah 189, 98 P. 2d 703.

If the Price case and the Helper case are each considered separately, it appears that the plaintiffs' remedy at law is adequate. In the Price case the plaintiffs have already been convicted. They may appeal from this conviction. The enforcement of the fine will be suspended until the appeal is decided and any errors will be corrected on appeal. Plaintiffs are not in a position comparable to that of a public officer who has been convicted of a crime that will result in forfeiture of his office. Nor will any harm ensue if plaintiffs are convicted in the Helper case and are in that case forced to employ their remedy of appeal. The element of hardship of which the plaintiffs are really complaining is the multiplicity of suits which the county attorney threatens to file if they continue to keep open their places of business on Sunday. Petitioners point out that if they close Sundays awaiting the outcome of an appeal, they would forego to their competitors the Sunday business during such period, and if they prevail they will have suffered loss of profits. But this alone is not necessarily irreparable damage. One of the risks of all citizenry is that they must submit to the law as it is declared until it is repealed or found invalid even though it entails some loss or inconvenience. The matter might take on a different aspect if the price of compliance to a questionable law affects the rights of a whole

class and may mean ruin. While the difference may be one of degree, it is such a difference which may mean the issuance or withholding of the writ.

Perhaps the court is not entirely without some discretion in determining whether or not another adequate remedy exists. "Discretion" does not mean happy or fortuitous choice, but a discretion guided by circumstances surrounding the litigation. If the term "adequate remedy" were an absolute, it might be incorrect to say that we could ever grant the writ where there was another adequate remedy. But "adequate remedy" is a matter of degree and may run the gamut of situations at one end where not to grant the writ would leave the petitioner where he could not retrieve himself, (Atwood v. Cox) to situations on the other hand where not to grant the writ would leave the petitioner where there were no factors of hardship other than those which attend the ordinary judgment and appeal. In between, situations may arise where, in the single case at bar, there appears to be a remedy adequate in the ordinary course of the law, but where there are urgent public questions or questions of public policy involved directly or indirectly related or dependent upon the outcome, or where the urgent rights of a large group of the public await the resolution of the question, or where a multiplicity of suits threaten, or where some factors, either intrinsic or extrinsic to the litigation, reveal the ordinary course of the law really not to be adequate although on the face of things it may technically appear to be. In those cases the writ may issue in the sound discretion of the court. Perhaps another way of stating the proposition would be to say that such circumstances involve a contradiction and actually defeat the adequacy of the remedy at law—render it not so. In the last analysis, adequacy of legal remedy may be under certain circumstances a matter for reasonable differences of opinion. In such cases if judgment prevailed for issuing the writ over judgment against issuing it, it could be said to have issued in the sound discretion of

the court, even though other minds might have reasonably concluded that the legal remedy was adequate. But "sound discretion" must always be labelled with the precautionary admonition that the writ is for extraordinary occasions and should be sparingly used.

The defendants contend that if the writ may be issued under the facts presented, injunction is obtainable. Thus they argue, the petitioners do have an adequate remedy without the issuance of a writ of prohibition. While as a general rule the enforcement of a criminal statute ■ would not be enjoined by injunction (28 Am. Jur. 372) there is one exception to this rule. An injunction will issue to restrain the enforcement of an unconstitutional statute when such restraint is necessary to prevent irreparable damage to property. *Nation* v. *Chism*, 154 Okl. 50, 6 P. 2d 766; *Wadhams Oil Co.* v. *Tracy*, 141 Wis. 150, 123 N. W. 785, 18 Ann. Cas. 779; *Joseph Schlitz Brewing Co.* v. *Superior*, 117 Wis. 297, 93 N. W. 1120; Ex parte Young, 209 U. S. 123, 28 S. Ct. 441, 52 L. Ed. 714, 13 L. R. A., N. S., 932, 14 Ann. Cas. 764; *San Diego Tuberculosis Ass'n* v. *City of East San Diego*, 186 Cal. 252, 200 P. 393, 17 A. L. R. 513; *Jones* v. *City of Los Angeles*, 211 Cal. 304, 295 P. 14; *Deese* v. *City of Lodi*, 21 Cal. App. 2d 631, 69 P. 2d 1005.

In *Corbin* v. *Rodgers*, 53 Ariz. 35, 85 P. 2d 59, 61, the court properly limited the application of this rule when it said:

"It is frankly admitted that the general rule is that such an injunction [to enjoin enforcement of a penal statute] should not issue, but it is also urged that there are circumstances under which the court has not only the jurisdiction but should, in the exercise of its discretion, enjoin even the enforcement of a public law. This is held by many cases. [citing cases] It will be noticed upon an examination of these cases that the complaints practically invariably contain two features, an allegation that the enforcement of the law will result in irreparable injury to the property of the plaintiff, and that he will be forced into a multiplicity of suits at law in order to obtain redress, if he be entitled to such."

Another limitation to the use of injunction is suggested in a recent article by Borchard, "Challenging Penal Statutes by Declaratory Action," Vol. 52, Number 3, June 1943, Yale Law Journal in which the thesis is developed that the declaratory Judgment is in certain cases superior to injunction for challenging the constitutionality of penal statutes.

In the instant case the action was commenced in the district court and came to this court by appeal. It raised substantially the same points as a petition for an injunction would have done. Under the holding of *Hoffman* v. *Lewis*, 31 Utah 179, 87 P. 167, and *Clark* v. *Bramel*, 57 Utah 146, 192 P. 1111, we may disregard the form and consider this as though it were an appeal from an order refusing injunctive relief. And whether this be treated as an appeal from an order vacating an alternative writ or as an appeal from an order refusing injunctive relief, we believe that the various factors involved are sufficient to justify an examination of the merits of the case on this appeal. We, therefore, proceed to the merits.

In determining constitutionality, statutes are presumed to be constitutional until the contrary is clearly shown. It is only when statutes manifestly infringe upon some constitutional provision that they can be declared void. Every reasonable presumption must be indulged in and every reasonable doubt resolved in favor of constitutionality. *State* v. *Packer Corp.*, 77 Utah 500, 297 P. 1013; *Stillman* v. *Lynch*, 56 Utah 540, 192 P. 272, 12 A. L. R. 552; *State* v. *Sopher*, 25 Utah 318, 71 P. 482, 60 L. R. A. 468, 95 Am. St. Rep. 845.

The constitutionality of general Sunday closing laws, which have been enacted in nearly every state, is no longer to be doubted. Such statutes have been uniformly upheld. *State* v. *Sopher*, supra; *Strand Amusement Co.* v. *Commonwealth*, 241 Ky. 48, 43 S. W. 2d 321; *State* v. *Haining*, 131 Kan. 854, 293 P. 952; *Stollenwerck* v. *State*, 201 Ala. 392, 78 So. 454; *State* v. *Medlin*, 170

N. C. 682, 86 S. E. 597; *Ness* v. *Ennis,* 162 Md. 529, 160 A. 8; *State* v. *Diamond,* 56 N. D. 854, 219 N. W. 831; *State* v. *Nicholls,* 77 Or. 415, 151 P. 473; see also collection of cases in *Elliott* v. *State,* 29 Ariz. 389, 242 P. 340, 46 A. L. R. 290, and *Mt. Vernon* v. *Julian,* 369 Ill. 447, 17 N. E. 2d 52, 119 A. L. R. 752.

Although these statutes had their origin in religious observance of the Sabath, they are not now to be so regarded. Their purpose is to protect society by establishing a compulsory day of rest. The cases last cited uphold this as a valid exercise of the police power. We pointed out in *State* v. *Sopher,* supra, that general Sunday closing laws are uniformly upheld and said:

"It is only upon special statutes, or special exceptions to general so-called Sunday laws, that the constitutionality of such enactments is seriously called in question."

The main question to be decided, therefore, is whether or not the exceptions in the Utah law are unreasonable and arbitrary so as to unconstitutionally discriminate between persons similarly situated.

The Utah Act, Sections 103-53-1 and 2, R. S. U. 1933, as amended in 1937, chapter 136, provides:

103-53-1.

"Every person who keeps open on Sunday any store, workshop, banking house, or other place of business for the purpose of transacting business therein, is punishable by a fine not less than $5 nor more than $100."

103-53-2.

"The provisions of the preceding section do not apply to persons who keep open hotels, boarding houses, baths, restaurants, bakeries, taverns, livery stables, garages, automotive service stations, golf courses, bowling alleys, ball parks, theatres, bathing resorts, ice stations, news stands, skating rinks, confectionery stores for the sale of confections only, tobacco stores for the sale of tobacco, pharmacies, or the prescription counters of retail drug stores on Sunday, for the legitimate business of each, or such industries as are usually kept in continuous operation."

In determining whether or not this classification is unconstitutional, it must be remembered that discrimination is the very essence of classification and is not objectionable unless founded upon distinctions which the court is compelled to find unreasonable. *State* v. *Mason*, 94 Utah 501, 78 P. 2d 920, 117 A. L. R. 330; *State* v. *Loomis*, 75 Mont. 88, 242 P. 344. The legislature has a wide discretion in determining what shall come within the class of permitted activities and what shall be excluded. *Ness* v. *Ennis*, supra; *Komen* v. *St. Louis*, 316 Mo. 9, 289 S. W. 838; *Stewart Motor Co.* v. *City of Omaha*, 120 Neb. 776, 235 N. W. 332; *State* v. *Diamond*, 56 N. D. 854, 219 N. W. 831; *State* v. *Dolan*, 13 Idaho 693, 92 P. 995, 14 L. R. A., N. S., 1259.

"A court is not concerned with the wisdom or policy of the law and cannot substitute its judgment for that of the legislative body. If reasonable minds might differ as to the reasonableness of the regulation, the law must be upheld." *Justesen's Food Stores* v. *City of Tulare*, 43 Cal. App. 2d 616, 111 P. 2d 424, 427. See also *Nebbia* v. *People of State of New York*, 291 U. S. 502, 54 S. Ct. 505, 78 L. Ed. 940, 89 A. L. R. 1469.

There are several different types of Sunday closing statutes. The decisions, in which the constitutionality of the various types of statutes has been determined, fall quite readily into well-defined classes.

The case of *State* v. *Justus*, 91 Minn. 477, 98 N. W. 325, 64 L. R. A. 510, 103 Am. St. Rep. 521, 1 Ann. Cas. 91, is typical of one group of cases. The statute involved therein provided generally that all places of business were to close on Sunday. A later provision then exempted the sale of certain commodities from the operation of the closing provision. Challenge is directed against this type of statute because of discrimination between commodities. It is argued that it is unreasonable to allow the sale of tobacco and forbid the sale of milk or groceries. But as pointed out in *State* v. *Diamond*, supra, no two persons agree on

the items which are to be excluded and those which are to be included.

"It is possible some would not place in the excepted class such commodities as tobacco and cigars. Others may say the sale of 'newspapers and magazines' was not a necessity. The Legislature has a right to so declare them within the excepted class and permit the sale of these on the day of rest." [56 N. D. 854, 219 N. W. 833.]

This type of statute is almost uniformly upheld. The courts point out that any one can sell any of the exempted commodities and that there is, therefore, no discrimination as long as the legislature stays within proper limits in providing for exceptions. *State* v. *Diamond,* supra; *Theisen* v. *McDavid,* 34 Fla. 440, 16 So. 321, 26 L. R. A. 234; *City of Seattle* v. *Gervasi,* 44 Wash. 429, 258 P. 328; *State* v. *Dolan,* 13 Idaho 693, 92 P. 995, 14 L. R. A., N. S., 1259; also see the note in 46 A. L. R. 292, and in 119 A. L. R. 752.

Under the second group of cases the statutes in question have no general closing provision. Generally all businesses are permitted to stay open on Sunday. The statute is directed toward a particular type of business and compels only it to close. *Stewart* v. *City of Omaha,* supra, is a typical case. There the statute prohibited any person from selling or exchanging any automobile on Sunday. The act was complete in itself and referred only to automobile sales. The court said it operated uniformly on all persons in the class and was not discriminatory. See *Komen* v. *City of St. Louis,* supra, for a similar statute applied to bakeries; *State* v. *Murray,* 104 Neb. 51, 175 N. W. 666, 8 A. L. R. 563, for a statute referring only to barbers; *Justesen's Food Stores* v. *City of Tulare,* 43 Cal. App. 2d 616, 111 P. 2d 424, for a statute directed only to stores selling uncooked meats; *Richman* v. *Board of Com'rs,* 122 N. J. L. 180, 4 A. 2d 501; *Rosembaum* v. *City and County of Denver,* 102 Colo. 530, 81 P. 2d 760.

In other decisions courts have closely scrutinized such statutes and held them unconstitutional unless there was a

clear basis for distinction. *Elliott* v. *State*, 29 Ariz. 389, 242 P. 340, 46 A. L. R. 284; *Cowan* v. *City of Buffalo*, 157 Misc. 71, 282 N. Y. S. 880; *Gaetano Bocci & Sons Co.* v. *Town of Lawndale*, 208 Cal. 720, 284 P. 654; Ex parte Ferguson, 62 Okl. Cr. 145, 70 P. 2d 1094; *Eden* v. *People*, 161 Ill. 296, 43 N. E. 1108, 32 L. R. A. 659, 52 Am. St. Rep. 365.

The third group of cases construe statutes similar to the one before the court in the instant case. This type of statute has a general closing provision and a later provision which exempts certain businesses or occupations from the operation of the general provision. This type of statute is assailed because it compels one group of lawful business to close on Sunday but allows others to remain open. This type of statute should be distinguished from those discussed above under groups one and two.

Statutes which exempt certain businesses have been upheld in many jurisdictions. See *State* v. *Sopher*, Utah, supra; In re Sumida, 177 Cal. 388, 170 P. 823; *Liberman* v. *State*, 26 Neb. 464, 42 N. W. 419, 18 Am. St. Rep. 791; Ex parte Koser, 60 Cal. 177, 188; Ex parte Andrews, 18 Cal. 678; *State* v. *Nichols*, 28 Wash. 628, 69 P. 372; *State* v. *Nicholls*, Or., supra; *State* v. *Medlin*, N. C., supra.

The court in Re Sumida, supra [177 Cal. 388, 170 P. 824], upheld an ordinance which had a general closing provision and then excepted:

"Bona fide hotels, boarding houses, lodging houses, restaurants, bakeries, livery stables, retail drug stores, confectionery stores, ice cream parlors, garages, transfer, railroad, telephone, telegraph or express office, dried or green fruit packing houses, newspapers or periodical agencies."

The ordinance then provided that where an exempted business was carried on in conjunction with a nonexempt business, it must be separated by a seven-foot screen or partition. Apparently any one wishing to engage in an exempted business in conjunction with a nonexempt busi-

ness could do so by making such a partition. In fact this amounts to little more than a commodity classification. The cases last enumerated above have also upheld general closing statutes where fruit stands, taverns, bath houses, periodical agencies, photograph galleries, vendors of milk, undertakers, automotive service stations, ball parks, theatres, grocery stores and meat shops were permitted to open for a short time Sunday morning while businesses like jewelers, tailors, etc., were required to remain closed.

The appellants cite the case of *Mt. Vernon* v. *Julian*, 369 Ill. 447, 17 N. E. 2d 52, 119 A. L. R. 747, in support of their contention that this latter type of statute is unconstitutional. The court expressly stated that it could see no basis for distinction between a cigar store, which could open, and a dress shop which must close, or between a bakery and a shoe shining store, or between a grocery store and a confectionery store. Under the reasoning of this Mt. Vernon case the Utah Sunday Closing Law would clearly be unconstitutional.

It should be noted that none of the above cited cases construed statutes which were exactly the same as the Utah Act. In each the wording is different and the excepted businesses vary. In the last analysis, therefore, the exemptions enumerated in the Utah Act must themselves be examined in the light of the general principles stated at the beginning of the opinion.

These statutes were apparently designed to provide generally for a day of rest. By "rest" was not meant inaction. It was recognized that in this modern age recreation or change of activity is a form of rest. Exceptions apparently were designed to exempt (1) works of necessity, and (2) businesses which were calculated to fit into a recreational scheme.

While several of the exemptions appear to be made on the theory that they were works of necessity, we find no specific exemption for all works of necessity. Were this

the only objection we might read into these statutes an implied exemption of all works of necessity; although ordinarily where exceptions to a statute are enumerated in specific detail, it is indicative of a legislative intent not to permit other or additional exemptions, and no other or further exceptions will usually be implied. Unless such an implied exemption were read into the act none of the exempted business could sell sick room supplies other than compounded medicines. There are other business activities involving the sale of items necessary to the maintenance of life and health which are not specifically exempted from the general closing provisions, yet the legislature cannot under such a statute constitutionally prohibit the sale of such items.

Under the portions of the statutes designed to make available certain commodities which fit into a scheme of recreation, it appears that the statutes also unconstitutionally discriminate between persons or firms similarly situated. Confectionery stores may keep open under the statutes to sell soft drinks and confections; grocery stores which sell the same items must close. No provision is made at all for ice cream parlors which fit as readily into a scheme of recreation as confectionery stores. Pharmacies may stay open for the legitimate business of a pharmacy store, which business usually includes more than the compounding of prescriptions; yet a drug store which sells the same items as a pharmacy store is not granted a similar privilege for drug stores may keep open only their prescription counters. In the case of *Saville* v. *Corless*, 46 Utah 495, 151 P. 51, 52, L. R. A. 1916A, 651, Ann. Cas. 1918D, 198, in analyzing a law requiring generally all businesses to close at 6 p.m. every day but exempting particular businesses from the scope of the act, we indicated that this would be unconstitutional discrimination when we stated:

"* * * a hardware, jewelry, book, dry goods, clothing, or cigar store, and many other stores, cannot keep open or sell anything after

6 o'clock. But a drug store, or a store whose major portion of stock is foodstuffs, can keep open after 6 o'clock, and sell anything not otherwise forbidden by law. Drug stores are not restricted after 6 o'clock to the sale of drugs merely, nor are food stores to food and provisions. They are privileged to sell, and under the admitted facts do keep open and sell, after 6 o'clock, the same things the plaintiffs are forbidden to sell after that hour. Clearly that is special legislation, and the granting of privileges forbidden by the Constitution."

It may be noted that in the Saville case the court interpreted the provision therein involved to permit drug stores to stay open after 6 o'clock to sell anything while competitors selling many of the same items carried by drug stores were compelled to close. Under such a construction of that provision, we had a problem similar to the one under discussion here and to that extent the reasoning of the Saville case is applicable. But by citing this reasoning we do not necessarily reaffirm the reasoning by which it was concluded that the provision permitted drug stores to stay open to sell anything. It may not have been unreasonable for the court to have held that drug stores, under the provision, could stay open after 6 o'clock only for the sale of items not sold by their competitors who were compelled to close; that the provision prohibited the sale by drug stores of hardware, jewelry, dry goods, clothing, etc., after six and merely permitted them to stay open to sell their other merchandise.

The exceptions in the Utah Sunday closing statutes are so broad that they in effect change the nature of this act from a general closing law, with exceptions, to a law aimed, without sufficient legal reason, at certain classes of business with a general exception to other classes which in effect is a grant of a special privilege to the excepted class while without legal excuse denying them to others.

Further, it should be noted that these statutes are designed to apply in every locality and to every merchant throughout the state. The question as to whether they are

unreasonable and discriminatory must therefore be analyzed from the standpoint of their state-wide application. It is common knowledge that in many communities in this state where confectioneries, tobacco, drugs, ice cream, soft drinks, and other items are sold there are no confectionery stores, nor any tobacco stores, or pharmacies, etc., as such. One general store may sell all of these items in conjunction with what is denominated a drug store. Or a general store may sell these commodities in conjunction with groceries, meat, dry goods, and hardware. If the general store is predominantly a drug store, then under the act it must close all but its prescription counter. The inhabitants of that locality would be unable to purchase any of those other commodities which under the legislative purpose have been designated as proper objects of sale in order to promote recreation; not because they are not sold in the locality but because the store which sells them also deals in drugs and medicine. Should the business be predominantly a confectionery store, then though the inhabitants would be able to secure confections, they must be deprived of medicine, tobacco, etc., for under the act confectionery stores may keep open for the sale of confections only. If such a store were permitted to stay open in order to make these various commodities available to the inhabitants of that locality, could a similar store in a neighboring community stay open to sell these commodities even though in that community there are also drug stores, tobacco stores, confectionery stores, as such? Because of this variance between various localities throughout the state, it appears that a Sunday Closing Law with exceptions based on types of business cannot be applied uniformly throughout the state without unreasonable discrimination arising. This holding is apparently in accord with the more recent cases from other jurisdictions. See Anno. in 119 A. L. R. 753, where it is stated:

"In marked contrast with the majority of the older cases cited in the earlier annotation at page 292 as having sustained, against attack

as being class legislation, statutes (and ordinances) prohibiting the following of certain occupations only, or, after a general prohibitory provision, excepting certain occupations and callings from the operation of the statute, a great majority of the more recent cases have held invalid, as being discriminatory or constituting class legislation, the various ordinances attacked on that ground."

In the opinion of the writer it would not have been going beyond the actual intent of the legislature to have construed these statutes to provide that a business, in order to stay open, had only to be primarily designated as one of the exempt businesses. That having satisfied this requirement, such a business could have stayed open to engage in the sale of any items sold by other exempted businesses. Thus a bakery, in addition to the sale of bakery goods, could have sold candy and tobacco; a drugstore could have sold candy, tobacco, and all supplies sold by pharmacies; a tobacco store could have sold candy and soft drinks, etc. Likewise, I think that it could reasonably be held that the intention of the legislature in providing that confectionery stores could stay open for the sale of confections only and tobacco stores for the sale of tobacco only was designed to prohibit only the sale of such items as razor blades, stationery supplies, pipes, cigar and cigarette holders, etc., rather than to prohibit the sale of candy in a tobacco store and vice versa. But the statutes are awkwardly drawn and while the overall intent seems to be as outlined next above, the specific exemptions made and the language used in making them seem to defeat the manifest overall intent. And even if such an interpretation were given to the statutes, there would still be difficult problems of administration which possibly would create unconstitutional discriminations in such administration. I am therefore induced to go along with the majority of the court with the interpretation first set out above.

We therefore conclude that the statutes in question are unreasonably discriminatory and that they are therefore unconstitutional. The district court erred in vacating the

alternative writ of prohibition. Such writ should be and is hereby made permanent.

LARSON and McDONOUGH, JJ., and M. J. BRONSON, District Judge, concur.

MOFFAT, Justice (concurring in the result).

I agree that the statutes in question are unreasonably discriminatory and therefore unconstitutional. I therefore concur in the result reached.

PRATT, J., on leave of absence.