William C. NATION, Mayor and City Commissioner of Safety, Herbert Kingham, City Commissioner of Finance and Public Property, and Elmer Parsley, City Commissioner of Streets and Public Improvements, as individuals and as the duly acting and qualified City Commissioners of the City of Cheyenne, Wyoming, and all agents of the City of Cheyenne, Appellants (Defendants below),

v.

GIANT DRUG COMPANY, Appellee (Plaintiff below).

No. 3256.

Supreme Court of Wyoming.

Nov. 9, 1964.

A. Joseph Williams, Robert L. Duncan, Cheyenne, for appellants.

Roncalio, Graves & Smyth, John R. Smyth, Cheyenne, for appellee.

Before PARKER, C. J., and HARNSBERGER, GRAY and McINTYRE, JJ.

Mr. Justice GRAY delivered the opinion of the court.

Plaintiff Giant Drug Company, a Wyoming corporation and owner and operator of a drugstore within the corporate limits of the City of Cheyenne, Wyoming, brought an action to enjoin the officials of the City of Cheyenne from enforcing an ordinance enacted by the city requiring the closing of certain businesses on Sunday. In its complaint plaintiff alleged, among other things, that such ordinance on its face was violative of several constitutional provisions of this .State and the United States. Upon trial the court determined that such ordinance was unconstitutional and granted a permanent injunction restraining the enforcement of the ordinance against plaintiff for the reason that such enforcement "would cause irreparable injury to plaintiff." Defendants appeal from that judgment.

The ordinance (No. 1435 as last amended December 9, 1963) provides as follows:

"Section 1. That Sections 31–30 and 31–31 of the Cheyenne City Code are hereby repealed and re-enacted to read as follows:

"31–30. Except as provided hereinafter, no person shall keep open for any period of time on the first day of the week, commonly called Sunday, any pawn shop or place of business where items of personal property are sold or offered for sale.

"This Ordinance shall not apply to the following businesses:

"(1) Grocery stores, dairy stores, and drug stores insofar as they sell the following items: fresh milk, buttermilk, cream, canned milk, ice cream, ice cream toppings, butter, eggs, margarine, number one pack shortening, cheese, bread, crackers, cakes, cookies, pastries, cooked meats, canned fish, weiners, meat sauces, pork and beans, peanut butter, potato salad, potato chips, olives, pickles, baby food, fresh fruits, fresh salad vegetables, salad dressings, coffee, tea, cocoa, corn syrups, number one pack sugar, salt, pepper, candy, cigarettes and tobacco, dog food, soap, matches, bottled beverages and paper goods; provided, that persons wishing to keep such stores open for the sale of such items on Sunday shall first obtain from the City Police Department written approval of a division or partition completely separating the portion of the store where such items are kept for sale from the portion of the store where other items are kept for sale.

"(2) Drug stores, provided, that sales shall be limited to medicines, cosmetics, films, film processing, greeting cards, and the items specified in subparagraph (1) hereof, and, provided, that the written approval described in subparagraph (1) shall be required.

"(3) Service stations for the sale of petroleum products, provided, that the sale of tires, batteries and other items necessary for the operation of an automobile, shall be limited to the replacement of such items as have become useless.

"(4) Cigar stores, provided, that sales on Sunday shall be limited to tobacco, smoking supplies, candies, books and magazines.

"(5) Restaurants, dining rooms, cafeterias, and similar businesses serving prepared food and beverages.

\* \* \* \* \* \*

"6. Nurseries, greenhouses and other businesses selling flowers and plants, provided that sales shall be limited to such items.

"7. Christmas tree lots and other places where Christmas trees are sold, provided, that sales shall be limited to Christmas trees, tree decorations, wreaths, grave blankets and stands.

"8. All places of business during the month of December for the limited purpose of selling Christmas decorations.
\* \* \*"

The principal contentions of plaintiff with respect to the claimed invalidity of the ordinance are (1) that defendants were without authority, express or implied, to enact the so-called "Sunday Closing Law"; and (2) that such ordinance is violative of the due process and equal protection clauses of the Constitution of the United States and this State for the reason that (a) it discloses on its face an unreasonable and discriminatory classification between businesses similarly situated and engaged in the sale of merchandise, (b) that the ordinance is unreasonable and discriminatory with respect to classification of commodities that may or may not be sold, (c) that the provisions proscribing certain business activities are so vague, ambiguous, and indefinite that men of common intelligence must guess as to what the ordinance permits or forbids, and (d) that the provision thereof requiring an owner physically to separate and partition off, in keeping with the approval of the police department, portions of a store where exempt commodities only may be offered for sale is unreasonable and in addition constitutes an unlawful delegation of power under the provisions of Art. 2, § 1 of the Constitution of Wyoming.

On the other hand, the defendants contend that the ordinance is a lawful exercise of the police power of the city to advance the general welfare of the inhabitants thereof and is not unreasonable or discriminatory in violation of constitutional provisions as claimed by plaintiff. It is also contended that the finding of the trial court that plaintiff would suffer irreparable injury is not sustained by the evidence and thus the court erred in granting the injunction.

Turning to the claimed lack of authority in the city to enact closing laws, it appears counsel for plaintiff intermingles the question of the grant of power with the discriminatory abuse in its exercise. Such power is not inherent in a municipality but must be delegated by the State. Blumenthal v. City of Cheyenne, 64 Wyo. 75, 186 P.2d 556, 563. Appellant finds the necessary statutory authority in § 15-653, W.S.1957, the fourth paragraph of which provides:

"To restrain, prohibit and suppress tippling shops, billiard tables, bowling alleys, houses of prostitution and other disorderly houses and practices, games and gambling houses, desecrations of the Sabbath day, commonly called Sunday, and all kinds of public indecencies;"

We are not impressed with that conclusion. The rule of ejusdem generis is sufficient to repel it. None of the business activities proscribed by the ordinance are tainted with either indecency or immorality. Under Paragraph Twenty-Fourth of the same statute the city was empowered:

"To make all such ordinances, by-laws, rules, regulations, resolutions, not inconsistent with the laws of the state, as may be expedient, in addition to the special powers in this section granted, maintaining the peace, good government and welfare of the city and its trade, commerce and manufactures, \* \* \*"

The general welfare reference in this portion of the statute is sufficient authority for the city to require the closing of business establishments if such regulations are not discriminatory. The appellee argues that Ch. 100, S.L. of Wyoming, 1961, in some

fashion delimited the foregoing grant of authority to municipalities, but this hardly bears scrutiny. Chapter 100, S.L. of Wyoming, 1961, does not purport to, nor does it, repeal the general welfare clause contained in the charter powers granted the municipality.

The important question, however, is whether or not the ordinance herein represents a *lawful exercise of the power.* We must confess that solution of the problem is not free from difficulty. Since the decision of the United States Supreme Court in McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393, and Two Guys From Harrison-Allentown, Inc., v. McGinley, 366 U.S. 582, 81 S.Ct. 1135, 6 L.Ed.2d 551, rehearing denied 368 U.S. 869, 82 S.Ct. 21, 7 L.Ed.2d 69, it is clear that although efforts to regulate such matters may have some religious overtones and may even at times interfere wtih property rights, they are nevertheless countenanced as having for their purpose the general welfare of the people by providing a day devoted to rest, repose, recreation, tranquility, and family togetherness if they are nondiscriminatory. It is also clear that legislative bodies may classify commercial activities. However, it is just as true that any law enacted in the exercise of police power must be reasonable and not arbitrary or discriminatory. Kalman v. Western Union Telegraph Company, Wyo., 390 P.2d 724, 726. It is on this score that the authorities have reached divergent results. See Annotation 57 A.L.R.2d 977. We shall not undertake to analyze or rationalize the several holdings except to say that despite the great volume of litigation and enumeration of general standards often invoked, no precise formula or test has yet been devised that ordains departure from that which is regarded as constitutionally permissive and entry into the realm of the unreasonable, the arbitrary, or the discriminatory use of the power. That is due in part, no doubt, to the reluctance of courts to undertake to establish permanent rules to settle in future cases what is and what is not a proper and a lawful exercise of the

power to regulate business. State ex rel. Newman v. City of Laramie, 40 Wyo. 74, 275 P. 106, 109.

In this connection it would seem appropriate to mention certain general principles to which we have adhered in this general field of the law. While several of the cases dealt with state statutes, rather than ordinances of a city, the pronouncements are apropos in either event. In State v. Sherman, 18 Wyo. 169, 105 P. 299, 300, 27 L.R.A.,N.S., 898, Ann.Cas.1912C 819, it was said:

> "It is well settled that the fourteenth amendment to the federal Constitution does not prohibit a reasonable classification of persons and things for the purpose of legislation. Atchison, etc., R. Co. v. Matthews, supra. [174 U.S. 96, 19 S.Ct. 609, 43 L.Ed. 909.] And it is also well settled that such a classification is permissible under the provision in a state Constitution forbidding the enactment of local or special laws. McGarvey v. Swan, 17 Wyo. 120, 96 P. 697. The classification must be reasonable in view of the object sought to be accomplished. The discrimination must rest upon some reasonable ground of difference between the persons or things included and those excluded, having regard to the purpose of the legislation, and, within the sphere of its operation, the statute must affect all persons similarly situated. The constitutional requirement of uniformity in the case of a general law is complied with if it operates alike upon all persons or property under the same circumstances and conditions. * * *"

The recent case of Bulova Watch Company v. Zale Jewelry Company of Cheyenne, Wyo., 371 P.2d 409, 417, summarizes our holdings rather well. Justice Harnsberger, author of the opinion, stated as follows:

> "* * * that a law will not be declared unconstitutional unless clearly so; that even though police power is an attribute of sovereignty essential to civilized government and inherent in the legislative body, the means adopted

for its exercise must be reasonable and designed to accomplish the end in view; that the purposes for which the police power is invoked must have relation to the public weal, must be within the scope and in furtherance of that power, and the means adopted must be reasonable and appropriate for the accomplishment of and have a substantial connection with the end in view; that under its police power the legislature may provide for the general economic welfare of the people and decide whether free and unlimited competition shall prevail; that courts, employing a standard of reasonableness as applied to the facts, are the final arbiters as to whether the law is an unwarranted invasion of rights guaranteed by the Constitution; and that generally the use of property and the making of contracts shall be free of governmental interference, but neither property rights nor contract rights are absolute."

In State ex rel. Newman v. City of Laramie, supra, at 275 P. 107, we said:

"* * * If a municipal ordinance, passed under authority conferred in general terms, is found to be unreasonable, the court will say that the Legislature never intended to give authority to pass it. [Citing authority.] This has been said to be particularly so in regard to ordinances having relation to the liberty of the citizen or the rights of private property. * * *"

In the same case, at 275 P. 107–108, we said:

"* * * And, while the courts repeatedly have said that they should not decide as to the expediency of a measure, it has come to be settled by the high court whose decisions establish the rules limiting the exercise of the police power, that a court should and does determine whether, in its judgment, the law has a real or substantial relation to objects and purposes recognized as legitimate. 21 Harv.L. Rev. 499; 40 Harv.L.Rev. 953. The claim that the restriction in the law

bears a reasonable relation to a public interest must not rest on mere conjecture, but must be supported by something of substance. * * *"

We think we should also say that the specific question here is one of first impression with us, and in all of the cases reviewed we have not discovered a statute or ordinance that is substantially similar to the ordinance here. As a general rule these laws fall into three classes: (1) that which prohibits only a particular type of business and requires only it to close, (2) that which has a general closing provision, but which then proceeds to exempt certain businesses or occupations from its provisions, and (3) that which has a general closing provision but then proceeds to exempt the sale of certain commodities from its provisions, which is commonly called a "commodity type" ordinance. Humphrey Chevrolet, Inc. v. City of Evanston, 7 Ill.2d 402, 131 N.E.2d 70, 72, 57 A.L.R.2d 969; Broadbent v. Gibson, 105 Utah 53, 140 P.2d 939, 944. By simply referring to the face of the instant ordinance it is apparent that it clearly falls outside the classes mentioned and is indeed a "hybrid" enactment.

It will be seen that it does not undertake to proscribe all gainful commercial pursuits. Rather, out of the mainstream thereof, it proceeds to select for regulation only the class of businesses engaged in the sale of merchandise. But it does not rest there. Out of the class selected it then proceeds to select another class, i. e., grocery stores, dairy stores, drugstores, filling stations, cigar stores, restaurants, and nurseries which, circumscribed to the sale of specified commodities, are exempt under its provisions. It is difficult to conceive of the rationale of such purported classifications for purposes of advancing the general welfare aims set forth above, in the light of other pursuits that are left untouched such as construction works, manufacturing, processing, laundries, dry-cleaning establishments, other types of business-rendering services, and all types of mechanical and artisan labor. Courts have held that such

circumstances render an ordinance invalid as being unreasonable, arbitrary, and not in furtherance of the intendment of the legislative grant. Allen v. City of Colorado Springs, 101 Colo. 498, 75 P.2d 141; City of Mt. Vernon v. Julian, 369 Ill. 447, 17 N.E.2d 52, 119 A.L.R. 747; Skag-Way Department Stores, Inc., v. City of Grand Island, 176 Neb. 169, 125 N.W.2d 529; Gronlund v. Salt Lake City, 113 Utah 284, 194 P.2d 464. However, we do not rest our decision on that ground alone. As we view it, the ordinance is discriminatory within the class selected for regulation and is further discriminatory when applied to the preferred class selected for exemption.

Addressing ourselves to the first facet, we must confess our inability to conjure up a state of facts making it harmful for a bakery to remain open for the sale of bread and pastries but not harmful for a grocery store or dairy store to sell such products; for a candy store or variety store to sell candy, cigarettes, books, and magazines but not harmful for others to sell these items; for a tire store to sell tires and batteries but not harmful for a filling station to sell them; or for a dairy to sell dairy products but not harmful for a dairy store to sell them. Right here we should also mention the recreational phase of the ordinance. The legislative history of the city's closing law reveals that initially the only exceptions to the class were stores selling "delicatessen and picnic items," such items being specifically enumerated. The only change made by the amendment of this provision was to specify the type of stores that could sell such items. Conceding that picnicking fosters recreation, what about sporting goods stores whose every aim is to meet and serve that purpose; what about the golf pro shop; what about the bowling establishments selling a variety of merchandise consonant with that sport? Reason fails to supply any real or substantial basis for the distinctions that the ordinance undertakes to make in relation to the objects and purposes for which it is claimed to have been enacted.

The same is true of the discrimination within the preferred class. The evidence before us is that plaintiff operates a soda fountain in its drugstore. From it plaintiff may sell ice cream with toppings and bottled beverages. It may not serve "prepared food and beverages" and yet restaurants are permitted to do so. It is common knowledge that a drugstore sells newspapers, books, and magazines. So far as we can ascertain nothing in the ordinance permits the sale of newspapers, but a cigar store, as opposed to plaintiff, may sell books and magazines. The same thing is true of "smoking supplies" which apparently embrace something other than cigarettes and tobacco. Perhaps the end result of each such discrimination would not jeopardize the opening of a drugstore for the sale of medicines but when taken collectively, together with the requirements for partitioning, it can readily be seen that the net effect of the ordinance on the modern-day drugstore might well amount to complete prohibition of Sunday operations. Surely, there can be no reasonable basis for such treatment of a harmless and often necessary business.

In this connection we might refer briefly to the proscribed and the permitted commodities. Plaintiff was arrested and fined for the sale of a fever thermometer and a six-pack of a canned beverage. Reason does not explain how the sale of a fever thermometer adversely affects the general welfare, while the sale of an eyebrow pencil does not; how the sale of canned root beer or root beer prepared at the soda fountain adversely affects the general welfare but bottled root beer does not; how the sale of a crutch to the injured has such effect but the sale of a "get well" card does not. Many more absurdities can be found, not only as they affect the drugstore but the grocery store as well. There are undoubtedly many other facets of discrimination but we think the foregoing sufficiently illustrates the abuses heaped upon the conduct of lawful businesses by the ordinance.

In view of the foregoing we find it unnecessary to discuss the claimed vague-

ness and indefiniteness of the ordinance. However, we believe some mention of the partitioning provision of the ordinance is warranted. It is suggested to us that such provision is patterned after a provision of an ordinance sustained by the Supreme Court of California. Ex Parte Sumida, 177 Cal. 388, 170 P. 823. One answer to this contention is the obvious difference in the "cut" of the pattern. In the California case the ordinance dealt with particular types of business as a unit. While the ordinance here undertakes to do that, it goes further and separates a unitized business into commodity units. The difference is obvious and the result pernicious. For the present-day drugstore and grocery store to comply would entirely disrupt their normal ways and methods of displaying and merchandising their products during the other days of the week. For example, we are not shown just how the grocer could conveniently isolate his fresh meats from cooked meats; fresh salad vegetables from other vegetables; a number one pack of shortening or sugar from a number two pack; bottled beverages from canned beverages; soap from detergents, et cetera. The drugstore is confronted with similar problems. To withstand the test of reasonableness in a regulation such as this there must be "moderation and proportionateness of means to ends." Otherwise the courts will say that the legislature did not intend to grant authority for the regulation. State ex rel. Newman, supra, at 275 P. 107. No fair reason suggests itself for imposing such an unusual regulation in the name of facilitating enforcement. Furthermore we cannot escape the conclusion that the method selected makes compliance therewith oppressive and impracticable. That is not permitted. State v. W. S. Buck Mercantile Co., 38 Wyo. 47, 264 P. 1023, 1025, 57 A.L.R. 675. For such reasons we do not reach the question of unlawful delegation of power in connection with the provision.

■ In the light of the foregoing we think the conclusion inescapable that the ordinance is so permeated with unreasona-

ble, arbitrary, capricious, discriminatory, and oppressive provisions that it cannot stand. The means adopted are shown to be without substance in accomplishing the end in view, as a legitimate exercise of the police power. It is directly violative of Art. 1, § 7 of the Constitution of this State, which provides:

"Absolute, arbitrary power over the lives, liberty and property of freemen exists nowhere in a republic, not even in the largest majority."

The discriminations, under the guise of classification, are violative of Art. 1, § 34 of the Constitution of Wyoming, which provides:

"All laws of a general nature shall have a uniform operation."

Under all of these circumstances we are constrained to hold that the trial court did not err in declaring the entire ordinance invalid when tested by constitutional safeguards.

■ There remains to be considered the contention of the city that the court erred in granting a permanent injunction. Apparently defendants do not question the authority of the court to restrain enforcement of an invalid ordinance when property rights are involved. It is simply argued that there was not sufficient evidence to sustain the finding that plaintiff would suffer irreparable injury. In State ex rel. Kirk v. Gail, Wyo., 373 P.2d 955, 957, we held that the grant or denial of an injunction to restrain enforcement of a criminal statute was a matter for the trial court in the exercise of its sound discretion, "according to the circumstances and exigencies of each particular case." Injunction is a recognized remedy with respect to invalid closing laws. Olds v. Klotz, 131 Ohio St. 447, 3 N.E.2d 371, 374; Broadbent v. Gibson, 105 Utah 53, 140 P.2d 939, 943. Briefly to answer the contention, there was evidence of injury to plaintiff in loss of income, and on the basis of the entire record we cannot say that the trial court abused its discretion in granting the injunction.

Judgment affirmed.