# Richmond

## CITY OF NORFOLK v. PENN MUTUAL LIFE INSURANCE COMPANY.

March 22, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*John N. Sebrell, Jonathan W. Old, Jr.,* and *Robert W. Shultice,* for the plaintiff in error.

*Willcox, Cooke & Willcox,* for the defendant in error.

CAMPBELL, C. J., delivered the opinion of the court.

In 1930 there was a general reassesment of real estate in the city of Norfolk. The Penn Mutual Life Insurance Company is, and was, the owner of certain property on Granby street which it claims was then over-valued. It sought and obtained a measure of relief in the trial court. From the judgment of that tribunal the city has appealed.

Granby and Main are the two principal streets of Norfolk. Generally speaking, Main street runs east and west, and Granby, north and south. On the northwest corner of Main and Granby streets is the Atlantic Hotel which was for many years one of the leading hotels in the city. Going north, Plume street intersects Granby, and in the interior of this block on its left side are the lots in judgment. They adjoin each other. One fronts on Granby street about fifty feet and the other about

seven and one-half. Their total assessed value for the year 1930, which includes improvements, amounts to $112,940.00. The assessors were under the impression that the larger lot had a frontage of 51.2 feet. In the company's deed it fronted there fifty feet. It did not touch upon an alley to which it was supposed to have access, and it tapered a little to the rear.

The city conceded that by reason of these errors some deduction should be made, and was willing to reduce the assessment by $16,320 which, when made, would have left $96,620 as a proper charge. The trial court thought a further reduction necessary and finally placed its value at $81,050 which was $15,570 less than what the city contended for, and $31,890 less than the assessment of 1930. It was $42,080 less than the assessment of 1925.

D. H. Goodman, a realtor, agent for the company and in charge of this property, put its market value at about $50,000. He said that the gross rental revenue in 1925 was $17,629.50, and in 1930, $6,205.

R. W. Lindsay, another witness, also a realtor, valued the larger lot at $27,500 and thought that the land itself was worth somewhere from $450 to $500 per front foot.

A. L. Eggleston, another expert, thought that $50,000 was a fair figure.

E. A. Page valued the fifty-foot lot at $46,000 and the smaller lot at $6,500, making in the aggregate $52,500. He thought the land was worth about $800 per front foot.

A. Gordon Stephenson thought that the property as a whole was worth about $45,000 and that the land itself was worth $500 or $600 per front foot.

George F. Wilkinson and W. Ludwell Baldwin, two of the assessors, thought that their estimate was fair. Mr. Baldwin was also an assessor in 1925.

All of these witnesses believe that there had been a general decline in value. The assessors themselves reduced the 1925 assessment by $9,190. Witnesses for the company of course vary in their estimates but go much beyond the estimate finally adopted by the trial court,

which, as we have seen, fixes the present value of this property at $42,080 less than the assessment of 1925. The decline in rents is stressed. Unquestionably it is an important element but it is not the final test; if it were, unimproved city property would be worthless.

■ A retrospective view seems to tell us that the assessors in 1930 were unduly optimistic and failed to gauge the extent of depreciation in values of real estate. They thought that things would grow better soon and valued property accordingly. This view, in a measure, seems to have been shared by the insurance company itself, for it paid, apparently without protest, the taxes for 1930, and not until 1932 did it come to realize the possible extent of the present period of depression, a situation not confined to Norfolk but general throughout the country.

The character of improvements to a large extent governs rent receipts. Those in judgment are out of date. Witnesses differ as to the wisdom of their replacement. On behalf of the owner the suggestion is made that it might be well to tear down the present building, and build in its place a structure one story high. But manifestly such a building is unsuited to a lot near the business center and on the principal street of the city.

■■ Equality of assessments is a major consideration and carries with it a just apportionment of the burdens of taxation. It affirmatively appears that this assessment is fair and ratable compared with other assessments in the block. If reduced, it would place upon other properties a disproportionate charge. Moreover, it does not appear that values reached are out of proportion to those fixed in the taxing district generally. The only evidence tending to support such a claim of discrimination rests in the testimony of Mr. Eggleston, who said that going north on Granby street from Main, land on the second block is worth twice as much as that on the first, that on the third block, twice as much as that on the second, and that on the fourth block twice as much as that on the third.

He has valued this property at $50,000 and seems to think it desirable to tear down the building and replace it with one of but a single story. In other words, it appears that he is of opinion that the present improvements are worthless and that the only value rests in the land itself. If it is worth $50,000, then the same lot in the second block would be worth $100,000; in the third block $200,000; and in the fourth block $400,000. These estimates do not commend themselves and so we may fairly say that there is no testimony in the case which shows or tends to show discrimination.

A general scheme of assessment was adopted. For base value, land at the corner of Brooke avenue and Granby street was selected and valued at $3,000 per front foot, and from it the rate was graduated.

Mr. Baldwin tells us of the application of methods adopted: "Brooke avenue and City Hall, $3,000; inside property $2,900; Royster buildings $2,900. Proceeding then across City Hall avenue we valued the Norfolk Bond and Mortgage Building at $2,450. The Salmonsky building which adjoins it we valued at $2,000, and a portion of the Law building at $2,050. Proceeding into the block in question we valued at $1,700 with the exception of the $1,600 front foot value placed on the Columbia building, $1,990 on the corner on the old Salvation Army building which is not taxable; Virginia National Bank at $2,070. Proceeding to the other end we valued the Taylor building at $2,650 a front foot; the Portlock building at $2,800. The next block $2,500 with $2,600 on the corner, and the block between College Place and Freemason street—I have not got before me—but my recollection is one side was $2,300 and the other side was $2,400 a front foot.

"Q. Those figures were arrived at without any information at all as to the revenue derived from those properties, just an arbitrary figure fixed by the assessors?

"A. No, I cannot say that. We subdivided Granby street as a whole, picking up a rental here and there

until we were reasonably sure of an average rental along that thoroughfare."

The land in judgment was reduced from this maximum of $3,000 to $1,600 or by $1,400 per front foot.

Buildings were assessed on a base of cubic contents, the maximum being eighteen cents per cubic foot. The building here was assessed at five cents per cubic foot.

There does not appear to have been any direct appeal to the local board of equalization. But that board on its own motion is charged with equalization of real estate assessments [Tax Code, section 345 (Code 1930, appendix, p. 2224)], and so must have passed upon the assessment in judgment.

This case is governed by *City of Norfolk* v. *Snyder*, 161 Va. 288, 170 S. E. 721; *City of Roanoke* v. *Gibson*, 161 Va. 342, 170 S. E. 723; and *City of Roanoke* v. *Williams*, 161 Va. 351, 170 S. E. 726, 727. It is not necessary to restate the reasons and authorities there relied upon.

We have seen that the city, for reasons stated, was willing to reduce the assessment by $16,320 which leaves as a proper valuation $96,620. This we adopt and there should be refunded all taxes actually collected on said $16,320.

The judgment complained of is reversed and the value established is here fixed. Since the Penn Mutual Life Insurance Company has in part prevailed, it should recover costs.

*Reversed and remanded.*