**IN RE APPEAL OF PENNSYLVANIA RAILROAD COMPANY, CLASS II ASSESSMENTS, 1953.**

Superior Court of New Jersey
Appellate Division

Argued January 17, 1955—Decided February 2, 1955.

Before Judges CLAPP, JAYNE and FRANCIS.

*Mr. Joseph A. Davis* argued the cause for appellants Charles E. Adams and Harborside Warehouse Co., Inc. (*Messrs. O'Mara, Schumann, Davis & Lynch,* attorneys).

*Mr. Leo Rosenblum* argued the cause for respondent City of Jersey City (*Mr. John B. Graf,* attorney).

The opinion of the court was delivered by

CLAPP, S. J. A. D. The first question presented by this appeal is whether an order refusing to quash a subpoena *duces tecum* is final as to the witness subpoenaed, and hence appealable by him.

Jersey City, in an appeal before the Division of Tax Appeals, served the subpoena on Charles E. Adams, president of Harborside Warehouse Co., Inc., seeking to take his deposition pursuant to the Division's rules. Mr. Adams and Harborside moved to have the subpoena quashed, but the Division denied their motion. They appeal, though neither is a party to the case.

It must be conceded, and indeed is not disputed, that such an order is not final as to a party; nor can it be said to be an appealable interlocutory order, whether the appellant is a party or a witness. *United Cannery Maintenance v. Local 80–A, United Packinghouse Workers,* 16 *N. J.* 264 (1954); *Warren v. Hague,* 11 *N. J. Super.* 311 (*App. Div.* 1951); cf. *City of Newark v. Division of Tax Appeals, Dept. of Treasury,* 7 *N. J.* 8 (1951); *R. R.* 4:55–2, second sentence. However, appellants contend, it is final as to a non-party witness.

In determining whether such an order is final as to him, we—unless we proceed *a priori,* as an exercise in logic-chopping—must take into account the considerations at stake. On the one hand, if the witness cannot appeal the order, he has no means whatever of having his rights reviewed until he has been adjudged in contempt. On the other hand, if the witness can appeal the order, impediments are thrown in the way of a speedy litigation, *City of Newark v. Division of Tax Appeals, Dept. of Treasury,* 7 *N. J.* 8, 12 (1951), *supra,* bringing with them the evils of dilatory justice, not to speak of the matter of expense; indeed some party may, by financing a witness' appeal, seek willfully to halt a case or harass his adversary with delays and costs.

The prevailing philosophy of today—opposed, as it is, to intermediate and fragmentary appeals except in limited situations, *Warren v. Hague*, 11 *N. J. Super.* 311, 314 (*App. Div.* 1951), *supra*—rests upon these considerations of delay and expense. Under that philosophy, the term *final* has come to be used in its severest sense (as it is said) and without regard to the severity of the case. *Allen v. Tyler*, 32 *N. J. L.* 499 (*E. & A.* 1866, Beasley, C. J.).

. Moved doubtless by these considerations, authorities in this State and elsewhere have held that the order before us is not final as to the witness. Two of the consolidated appeals in *Schlossberg v. Jersey City Sewerage Authority*, 15 *N. J.* 360 (1954) were taken (as the opinion and the appendices in the case make clear) by non-party witnesses from an order directing one of them to comply with a subpoena returnable at a trial. The order was held to be interlocutory and not appealable. Of course, an appeal is more disruptive where it serves to halt a trial than, as is the case here, where it interferes with a depositional proceeding preliminary to an administrative hearing that may take months to try. But we do not think that the present case should be distinguished from the *Schlossberg* case because of those circumstances.

For other authorities to like general effect, see *Cobbledick v. United States*, 309 *U. S.* 323, 60 *S. Ct.* 540, 84 *L. Ed.* 783 (1940), *supra*, with an illuminating discussion of the question; *Alexander v. United States*, 201 *U. S.* 117, 26 *S. Ct.* 356, 50 *L. Ed.* 686 (1906); *Ray v. Glessner*, 155 *Ind.* 31, 57 *N. E.* 243 (*Sup. Ct.* 1900); *Strong v. Western Gas & Fuel Co.*, 177 *N. Y.* 400, 69 *N. E.* 721 (*Ct. App.* 1904); but see *International Coal Min. Co. v. Pennsylvania R. Co.*, 214 *Pa.* 469, 63 *A.* 880 (*Sup. Ct.* 1906); *Mayers v. Bronson*, 100 *Utah* 279, 114 *P. 2d* 213, 215, 136 *A. L. R.* 698 (*Sup. Ct.* 1941); 130 *A. L. R.* 327.

It is true that the course of litigation will be interrupted if the witness chooses to vindicate his rights by allowing himself to be adjudged in contempt and then taking an appeal. But in such a case, there is much less likelihood that the interruption will have been brought about in order to harass

a party. Besides, if the witness is not then allowed an appeal, he must suffer punishment without any opportunity for review.

The appellants rely heavily upon *In re Pillo*, 11 *N. J.* 8 (1952), which of course is binding on us. There the State appealed from an order adjudging that witnesses were not to be compelled to answer certain questions put to them in a grand jury investigation. The Supreme Court held:

"\* \* \* the orders \* \* \* terminate the proceedings as to the questions at issue and so are final in quality, appealable \* \* \* as final judgments \* \* \*."

After reflection we conclude the case is clearly distinguishable from *Cobbledick v. United States*, 309 *U. S.* 323, 60 *S. Ct.* 540, 84 *L. Ed.* 783 (1940), *supra*. As a pragmatic matter it could possibly be said that an appeal by the State in such a case (as distinguished from an appeal by a witness therein) is not an objectionable interruption of such an investigation (*cf.* the interpretation put by the *Cobbledick* case, 309 *U. S.*, at *page* 329, 60 *S. Ct.*, at *page* 543 (1940), *supra*, upon *Burdeau v. McDowell*, 256 *U. S.* 465, 41 *S. Ct.* 574, 65 *L. Ed.* 1048 (1921)); or it could perhaps be said that in such a collateral proceeding before an indictment, there is no other vehicle of review open to the State, *cf. Nelson v. United States*, 93 *U. S. App. D. C.* 14, 208 *F.* 2*d* 505, 516, 517 (1953); *Cheng Wai v. United States*, 125 *F.* 2*d* 915 (2*d Cir.*, 1942); but *cf. State v. Wood*, 23 *N. J. L.* 560, 561 (*E. & A.* 1850). Further see *Ellis v. Interstate Commerce Comm.*, 237 *U. S.* 434, 35 *S. Ct.* 645, 59 *L. Ed.* 1036 (1915), distinguished in *Cobbledick v. United States, supra; cf. United States v. Wallace & Tiernan Co.*, 336 *U. S.* 793, 802, 69 *S. Ct.* 824, 93 *L. Ed.* 1042 (1949). We need not go into these questions. Suffice it to say that *In re Pillo*, 11 *N. J.* 8 (1952), *supra*, is not controlling here.

The rule with which we are dealing is subject to exceptions, but this case is not one of them. The gross waste of time or the very great injustice that occasionally occurs because an interlocutory order is generally not appealable,

led to a proposal once that the Appellate Division be empowered to permit appeals in its discretion from such orders. *Cf.* Brick, 41 *Yale L. J.* 539, 564 (1932). But we were never vested with such authority.

██ The appeal to us must be dismissed. However (although we have not, as it will appear, been impressed with any great injustice done appellants here), we have looked into the meritorious question. The proceeding before the Division involves a tax imposed against the Pennsylvania Railroad Company's interest in certain land. The land (we are told—the record is very uninformative) is to be distinguished from a warehouse erected thereon which is operated by Pennsylvania's tenant, Harborside, and portions of which are subleased by Harborside to others.

Under the subpoena above mentioned, Jersey City sought to have Mr. Adams produce these subleases and to submit rental data connected with them. The question raised on the motion to quash was whether such data is relevant with respect to the value of the underlying land.

In support of its position Jersey City submitted an affidavit which is not controverted on the record. The affiant, claiming to have been for many years a real estate appraiser, states he considers it essential and important to secure such information in order, in the first place, to have "all economic data" as to the lands and, in the second place, to "determine a pattern or trend of rentals and rental values" as to the same.

The question here, under the applicable rule (see *R. R.* 4:16–2, made applicable to the Division of Tax Appeals by its rule XII, as amended December 16, 1953, *N. J. S. A.* 54:2–21), is whether the matter inquired into is "relevant to the subject matter." *Schnitzer and Wildstein N. J. Rules Serv. A IV–*436.

Where a subpoena is returnable at a trial, it has been said that there must be a substantial showing of relevance. *State v. Cooper,* 2 *N. J.* 540, 556 (1949); *cf. Schlossberg v. Jersey City Sewerage Authority,* 15 *N. J.* 360, 372 (1954), *supra.*

■ Here, however, we are dealing with a deposition. The practice on the taking of depositions would be much interfered with if they were frequently halted in order to have a court or tribunal determine whether or not a matter inquired about was relevant to the subject matter. Ordinarily such questions should await the event of trial, when the issues are more sharply defined. *Strecker v. Devine*, 11 *N. J. Super.* 272, 275 (*Law Div.* 1951); *Schnitzer and Wildstein, supra*, A IV–437; *R. R.* 4:22–3. For these reasons, it is held that a subpoena issued on the taking of a deposition will not be quashed, or the examination thereon limited, on the ground of irrelevancy, unless the irrelevancy is clear. 5 *Moore's Federal Practice* 1723 (2d ed.); 4 *Id.* 1065.

We need not define the scope of appellate review, except to say that an appellate court, *a fortiori*, should feel at least as much reluctance at interfering with the taking of a deposition in such a matter. *Cf. In re Manufacturers Trading Corp.*, 194 *F.* 2d 948, 959 (6 *Cir.*, 1952); *Shotkin v. Nelson*, 146 *F.* 2d 402, 404 (10 *Cir.*, 1944).

■ Rentals received under the subleases—at any event if there is a practicable way "to apportion [them] between the land and" the warehouse—may well be

"an element to be taken into consideration where a property is so situated that the yearly rental reflects its true value." *Gibbs v. State Board of Taxes, etc.*, 101 *N. J. L.* 371, 373 (*E. & A.* 1925), where the court held that a rental paid by a subtenant of an amusement park should not be used as a basis for an assessment; *Schetty v. Jersey City*, 18 *N. J. Misc.* 37, 39 (*St. Bd. Tax App.* 1940).

There is not the slightest suggestion here that such an apportionment is impracticable, and hence we do not pass on the matter. On the contrary in the uncontradicted affidavit submitted on the part of the city, the affiant swears that he considers it "essential" that this rental information be produced.

Besides these rentals may furnish some substantial check on whether or not the rental (if any) which Harborside pays Pennsylvania is realistic and a true reflection of value.

Further, see 4 *Moore, supra,* 1066; *Strecker v. Devine,* 11 *N. J. Super.* 272, 275 (*Law Div.* 1951), *supra; Schnitzer and Wildstein, supra, A IV*–436, *par.* 4; but *cf. Hollander v. Smith & Smith,* 10 *N. J. Super.* 82, 86 (*App. Div.* 1950).

In addition, proof as to trends of rental value (at least if some apportionment between lands and buildings is practicable) may be of aid to an appraiser, and hence relevant, in enabling him to form his opinion. *Delaware, L. & W. R. Co. v. City of Hoboken,* 10 *N. J.* 418, 434 (1952); but *cf. Hackensack Water Co. v. Division of Tax Appeals,* 2 *N. J.* 157, 163 (1949); *cf. City of Norwalk v. Penn Mut. Life Ins. Co.,* 162 *Va.* 101, 173 *S. E.* 533 (*Sup. Ct. App.* 1934).

Appellants claim that the rentals charged to sub-tenants of the warehouse involve services, such as elevators, porters, janitors, heating, lighting, etc. But the value of services not uncommonly affects rental income, such as that from an apartment house; and yet rental income may be a relevant, though certainly not a conclusive, factor in determining the true value of the apartment house. *Borough of Hasbrouck Heights v. State Board of Tax Appeals,* 125 *N. J. L.* 617 (*Sup. Ct.* 1941); *City Holding Co. v. State Board of Tax Appeals,* 127 *N. J. L.* 168 (*Sup. Ct.* 1941); *Prudential Ins., etc., v. Division of Tax Appeals,* 133 *N. J. L.* 153, 154, 155 (*Sup. Ct.* 1945), where one expert relied upon estimated operation and management expenses calculated on the basis of general practices of property owners; *North Bergen Tp. v. Bergen Boulevard Holding Co.,* 133 *N. J. L.* 569, 574 (*E. & A.* 1946). As to properties other than apartment houses, see *Aetna Life Insurance Co. v. City of Newark,* 10 *N. J.* 99, 106 (1952); *Hurd v. Cook,* 60 *N. J. L.* 70 (*Sup. Ct.* 1897).

It certainly cannot be said that the proof sought here is clearly irrelevant.

Appeal dismissed.